**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

PAUL DORR and ALEXANDER DORR, individually, and on behalf of all other persons similarly situated,

    Plaintiffs,

vs.

DOUGLAS L. WEBER, individually, and in his capacity as Sheriff of Osceola County, HIS SUCCESSORS, THE OSCEOLA COUNTY SHERIFF'S DEPARTMENT, and OSCEOLA COUNTY, IOWA,

    Defendants.

No. C 08-4093-MWB

**MEMORANDUM OPINION AND ORDER REGARDING THE MOTION TO DISMISS BY DEFENDANTS OSCEOLA COUNTY SHERIFF'S DEPARTMENT AND "SUCCESSORS" TO SHERIFF WEBER**

_____

**TABLE OF CONTENTS**

*I.   INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A.  The Plaintiffs' Complaint And Amended Complaint* . . . . . . . . . . . . . 2
   *B.  The Answers And Motions To Dismiss* . . . . . . . . . . . . . . . . . . . . . 7

*II.  LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   *A.  Standards For A Rule 12(b)(6) Motion To Dismiss* . . . . . . . . . . . . . . 8
   *B.  Claims Against The Osceola County Sheriff's Department* . . . . . . . . 11
      *1.   Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . . 11
      *2.   Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
   *C.  Claims Against The "Successors"* . . . . . . . . . . . . . . . . . . . . . . . 17
      *1.   Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . . 17
      *2.   Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Are a county sheriff's department and the county sheriff's "successors" proper defendants in a lawsuit challenging denials of the plaintiffs' applications for nonprofessional permits to carry weapons on the ground that the denials violated the plaintiffs' constitutional rights to bear arms, to due process, and to equal protection? The county sheriff's department has moved to dismiss the plaintiffs' complaint as to it, because it is not a legal entity with the right to sue or be sued. The "successors" have moved to dismiss, because no specific claims appear to be directed at them and, in any event, a sitting sheriff has no "successors," so that they cannot be identified or served and they do not exist. The plaintiffs contend that their claims are viable as to both of the movants.

## I. INTRODUCTION

### A. The Plaintiffs' Complaint And Amended Complaint

Plaintiffs Paul Dorr and Alexander Dorr filed their original "Class Action Complaint" (docket no. 2) initiating this action on behalf of themselves and other persons similarly situated on October 28, 2009, under 42 U.S.C. §§ 1983 and 1988 (civil rights statutes), 28 U.S.C. § 2201 (declaratory judgment statute), and the Second and Fourteenth Amendments to the United States Constitution. They named as defendants Douglas L. Weber, individually and in his capacity as Sheriff of Osceola County, "his successors," the Osceola County Sheriff's Department, and Osceola County, Iowa.

Before any party responded by answer or motion to the Dorrs' original Complaint, however, the Dorrs filed a "Class Action First Amended Complaint" (docket no. 16) on

November 19, 2008, naming the same defendants, and again asserting claims under 42 U.S.C. §§ 1983 and 1988 (civil rights statutes), 28 U.S.C. § 2201 (declaratory judgment statute), and the Second and Fourteenth Amendments to the United States Constitution. In their Amended Complaint, the Dorrs allege that, in 2007 and 2008, they sought nonprofessional permits to carry weapons, pursuant to IOWA CODE § 724.7, but, even though they met all of the statutory criteria necessary for issuance of such permits, pursuant to IOWA CODE § 724.8, Sheriff Weber refused to issue the permits without justification. Therefore, they allege generally that all defendants acted illegally in denying their applications for permits to carry a weapon, meaning that the decisions were unreasonable, not authorized, and contrary to the terms, spirit, and purpose of the statute creating and defining nonprofessional permits for citizens to carry a weapon under Iowa law, and, thus, the defendants violated their constitutional rights under the Second and Fourteenth Amendments of the United States Constitution, including their rights to due process, equal protection, and to keep and bear arms.

Somewhat more specifically, Paul Dorr alleges that he is a citizen of Iowa and the United States and a resident of Osceola County, Iowa. He alleges that he is a "community activist" engaged in public discourse on issues that some citizens would characterize as controversial and, consequently, some citizens have threatened him with physical harm (and even to shoot him), both during public debates and meetings, and via website blogs. He also alleges that, from time to time, he transports money from fund raising activities, for example, to banks. He alleges that, from 2001 to 2006, he was issued and allowed to renew a nonprofessional permit to carry a weapon, but that Sheriff Weber denied his applications for such a permit in 2007 and again in 2008. He alleges that, on August 9, 2007, Sheriff Weber told Paul Dorr that he had a problem with his application and that he had "heard different things from some of the citizens and there's some fear out there of

3

[Paul Dorr]," but that Sheriff Weber did not provide Paul Dorr with any specific allegations from citizens or otherwise substantiate or document his belief that there was "some fear" of Paul Dorr. Paul Dorr alleges that Sheriff Weber stated that he did not "feel comfortable issuing the permit" and did not "trust him." Paul Dorr alleges that, in response to his 2008 application, Sheriff Weber again denied him a permit and told him he "would deny any new application from [him]." Alexander Dorr alleges that he sought a nonprofessional permit to carry a weapon in 2008, but Sheriff Weber denied his application. Alexander Dorr alleges that, while Sheriff Weber did not give a reason for denying his application, Sheriff Weber did state that he would "consider a new application from [Alexander Dorr] after his twenty-first birthday." The plaintiffs allege that Sheriff Weber did issue Paul Dorr's wife, Debra Dorr, a nonprofessional permit to carry a weapon in 2008.

The Dorrs assert the following claims, on their behalf and on behalf of a putative class of similarly situated persons:[1] **Count I** alleges that Sheriff Weber denied the plaintiffs' permit applications in violation of their Second Amendment right to keep and bear arms and their Fourteenth Amendment right to due process; **Count II** alleges that Osceola County denied the plaintiffs' permit applications in violation of their Second Amendment right to keep and bear arms and their Fourteenth Amendment right to due process through Sheriff Weber, as the County's agent, and consistent with policies of the Osceola County Sheriff's Department and Osceola County; **Count III** alleges that the

---

[1]The putative class is defined in the Amended Complaint, ¶ 14, as "all individuals who have or will apply for a nonprofessional permit to carry a weapon under Iowa Code § 724.8, specifically those who have been denied a permit under Iowa Code § 724.8 (5)." The court observes that this class, as presently defined, is not restricted to persons who applied for nonprofessional permits to carry a weapon *in Osceola County* and who were purportedly denied such permits *by the named defendants*.

Osceola County Sheriff's Department denied the plaintiffs' permit applications in violation of their Second Amendment right to keep and bear arms and their Fourteenth Amendment right to due process through Sheriff Weber, as the agent of the Osceola Sheriff's Department, and consistent with policies of the Osceola County Sheriff's Department; **Count IV** alleges that Sheriff Weber denied the plaintiffs' permit applications in violation of their right to equal protection under the Fourteenth Amendment; **Count V** alleges that Osceola County denied the plaintiffs' permit applications in violation of their right to equal protection under the Fourteenth Amendment through Sheriff Weber, as the County's agent, and consistent with policies of the Osceola County Sheriff's Department and Osceola County; **Count VI** alleges that the Osceola County Sheriff's Department denied the plaintiffs' permit applications in violation of their right to equal protection under the Fourteenth Amendment through Sheriff Weber, as the County's agent, and consistent with policies of the Osceola County Sheriff's Department and Osceola County; and **Count VII** seeks declaratory judgment invalidating the provisions of the Iowa Code concerning determinations of whether or not to grant nonprofessional permits to carry weapons on the ground that those provisions are overly broad and vague and, as such, infringe the right to keep and bear arms in the Second Amendment to the United States Constitution. The Dorrs' constitutional challenge to the Iowa statutes appears to be both on the face of the statutes and as they were applied by Sheriff Weber.[2]

---

[2] The court observes that there is no indication in the record that the plaintiffs have given the notice of a constitutional challenge to a state statute or requested a certification by the court of a constitutional challenge to a state statute required by Rule 5.1 of the Federal Rules of Civil Procedure. The court believes, but does not hold, that the defendants named here are only the county, county officials in their individual and official capacities, and possibly a county agency, not the state, state agency, or state officers or
(continued…)

The Dorrs' Amended Complaint seeks extensive relief, consisting of the following: (1) certification of the class described in the Amended Complaint; (2) judgments that Sheriff Weber, Osceola County, and the Osceola County Sheriff's Department violated Paul Dorr's and Alexander Dorr's constitutional rights to due process as protected under the Fourteenth Amendment of the United States Constitution; (3) judgments that Sheriff Weber, Osceola County, and the Osceola County Sheriff's Department violated the Dorrs' constitutional rights to equal protection of the law as protected under the Fourteenth Amendment of the United States Constitution; (4) judgments that Sheriff Weber, Osceola County, and the Osceola County Sheriff's Deparment denied the Dorrs permits to carry a weapon thereby denying their Second Amendment rights to keep and bear arms under color of IOWA CODE § 724.8; (5) a judgment that IOWA CODE § 724.8(5) is unconstitutional under the United States Constitution; (6) a judgment that Paul Dorr and Alexander Dorr are entitled to nonprofessional permits to carry a weapon under IOWA CODE § 724.8; (7) a judgment (presumably in the form of an injunction) directing the Osceola County Sheriff's Department to immediately issue a nonprofessional permit to carry a weapon to Paul Dorr and Alexander Dorr; (8) a judgment for attorney fees and costs under 42 U.S.C. §§ 1983 and 1988, or any other statute allowing such fees and costs; and (9) such other relief as the court may deem just and equitable. The Dorrs' Amended Complaint does not, however, explicitly pray for any relief on behalf of the putative class.

---

²(…continued)
employees in their official capacities, such that the parties do not already include a party as to whom the mere service of the complaint would provide adequate notice of the constitutional challenge to a state statute required by Rule 5.1. *See* FED. R. CIV. P. 5.1(a)(1)(B).

### B. *The Answers And Motions To Dismiss*

On November 21, 2008, apparently unaware of the filing of the First Amended Complaint on November 19, 2008, the Osceola County Sheriff's Department and the "Successors" to Sheriff Weber filed a Motion To Dismiss Under F.R.C.P. 12(b)(6) (docket no. 18), directed at the Dorrs' original Complaint. On November 24, 2008, Sheriff Weber and Osceola County filed a joint Answer And Jury Demand (docket no. 19), also directed at the Dorrs' original Complaint.

On December 1, 2008, Sheriff Weber and Osceola County filed a joint Answer To First Amended Complaint And Jury Demand (docket no. 20), denying the Dorrs' claims. Their Answer also asserted various affirmative defenses: that the First Amended Complaint fails to state a claim upon which relief can be granted; that Sheriff Weber is immune from suit; that issuance of the permits in question is vested in the discretion of the sheriff by virtue of IOWA CODE § 724.11; that such discretion included determining additional criteria for issuance of a permit pursuant to the Iowa Administrative Code; that Sheriff Weber had a rational basis for his decisions to deny the permits in this case; that the Dorrs received all of the process that they were due under the Fourteenth Amendment; that fear of bullying, harassment, and intimidation by Paul Dorr as expressed by citizens of Osceola County is a legitimate basis for denial of a permit; and that there are no similarly-situated individuals to whom permits have been granted, so that there is no basis for an equal protection claim.

Also on December 1, 2008, the Osceola County Sheriff's Department and the "Successors" to Sheriff Weber filed a Motion To Dismiss First Amended Complaint (docket no. 21), on essentially the same grounds that these defendants had asserted in their

7

motion to dismiss the Dorrs' original Complaint.[3]  On December 15, 2008, the Dorrs filed a Brief In Opposition To Defendant Osceola County Sheriff's Department's Motion To Dismiss (docket no. 24), which included a resistance to dismissal of the "Successors."  No party requested oral arguments in the manner required by N.D. IA. L.R. 7.c., and the court has not considered it likely that oral arguments will benefit the court.  Therefore, the court will turn to resolution of the motion to dismiss, which is, admittedly, overdue.[4]

## II.  LEGAL ANALYSIS

### A.  Standards For A Rule 12(b)(6) Motion To Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a motion to dismiss on the basis of "failure to state a claim upon which relief can be granted."[5]  In a recent decision, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court revisited the standards for determining whether factual allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss:

---

[3] The November 21, 2008, Motion To Dismiss (docket no. 18), was never withdrawn, so it is still pending.  It will, however, be denied as moot.

[4] The Motion To Dismiss was fully briefed on December 16, 2008.  This court's heavy case load and crowded schedule notwithstanding, the court regrets that this matter was not resolved sooner.

[5] Effective December 1, 2007, Federal Rule of Civil Procedure 12 was "amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules."  FED. R. CIV. P. 12, advisory committee's note.  The advisory committee notes make it clear that the "changes are to be stylistic only."  *Id.*  The stylistic changes to Rule 12(b)(6) are in fact minimal, as Rule 12(b)(6) continues to authorize a motion to dismiss "for failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Thus, the recent amendment did not change the standards for a Rule 12(b)(6) motion.

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004) (hereinafter Wright & Miller) (" [T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact), see, *e.g.*, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508, n. 1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic*, 550 U.S. at 555-56 (footnote omitted). Thus, the Eighth Circuit Court of Appeals has recognized that, under *Bell Atlantic*, "To survive a motion to dismiss, a complaint must contain factual allegations sufficient 'to raise a right to relief above the

speculative level. . . .'" *Parkhurst v. Tabor*, ___ F.3d ___, ___, 2009 WL 1794691, *3 (8th Cir. June 25, 2009) (quoting *Bell Atlantic*, 550 U.S. at 555). To put it another way, "the complaint must allege 'only enough facts to state a claim to relief that is plausible on its face.'" *B&B Hardware, Inc. v. Hargis Indus., Inc.*, ___ F.3d ___, ___, 2009 WL 1740236, *3 (8th Cir. June 22, 2009) (quoting *Bell Atlantic*, 550 U.S. at 570).

Nevertheless, the court must still "accept as true the plaintiff's well pleaded allegations." *Parkhurst*, ___ F.3d at ___, 2009 WL 1794691 at *3 (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)); *B&B Hardware, Inc.*, ___ F.3d at ___, 2008 WL 1740236 at *3 ("[W]e 'assume[ ] as true all factual allegations of the complaint'" (quoting *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007)). The court must also still "construe the complaint liberally in the light most favorable to the plaintiff." *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (post-*Bell Atlantic* decision). On the other hand, "[w]here the allegations show on the face of the complaint that there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is [still] appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997), for this standard in a discussion of Rule 12(b)(6) standards in light of *Bell Atlantic*).[6]

---

[6]Where a party raises matters outside the pleadings on a Rule 12(b)(6) motion to dismiss, the court must treat the motion as a motion for summary judgment, if it is going to consider those matters. *See* FED. R. CIV. P. 12(b)(6); *see also Buck v. F.D.I.C.*, 75 F.3d 1285, 1288 & n. 3 (8th Cir. 1996). Rule 12(d) expressly provides for conversion of a motion to dismiss into a summary judgment motion when matters outside the pleadings are presented to and not excluded by the court, but also requires the court to give the parties a reasonable opportunity to present all the material that is pertinent to the motion. FED. R. CIV. P. 12(d). The court need not convert a motion to dismiss into a motion for summary judgment on the basis of presentation of matters outside of the pleadings,
(continued…)

### B. *Claims Against The Osceola County Sheriff's Department*

#### 1. *Arguments of the parties*

In support of its dismissal from this litigation, the Osceola County Sheriff's Department contends that it is not a legal entity under Iowa law capable of suing or being sued. The Department argues that Rule 17(b)(3) of the Federal Rules of Civil Procedure provides that capacity to sue or be sued, in the circumstances presented here, is to be determined "by the law of the state where the court is located." The Department then argues that Article 3, § 39A, of the Iowa Constitution, which grants counties "home rule" power and authority, IOWA CODE § 331.301, which codifies county power, and IOWA CODE § 331.653959, which delegates from the State of Iowa to local sheriffs the power to carry out duties related to the issuance and revocation of firearms permits, all lead to the conclusion that a county sheriff's department is not separate from the county or the sheriff. Relying on *Des Moines Mark Bd. v. City of Des Moines* 290 N.W. 680 (Iowa 1940), the Department argues that there is no statute indicating a purpose of the legislature to authorize a county sheriff's department to proceed independently of the county or its sheriff or expressly granting a county sheriff's department the power to sue or be sued. Attempting to distinguish *Kasparek v. Johnson County Bd. of Health*, 288 N.W.2d 511 (Iowa 1980), the Department argues that it has no power to make or enforce its own rules

---

[6](…continued)
however, if the court makes clear that it is ruling only on the motion to dismiss, and in those circumstances, the appellate court will also treat the ruling as a ruling on a motion to dismiss on any appeal. *Skyberg v. United Food and Commercial Workers Int'l Union, AFL-CIO*, 5 F.3d 297, 302 n.2 (8th Cir. 1993) (even where matters outside of the pleadings are presented to the court, a motion to dismiss is not converted into a motion for summary judgment "where the district court's order makes clear that the judge ruled only on the motion to dismiss," and where the district court has made the posture of its disposition clear, the appellate court will "treat the case as being in that posture").

and regulations independent of Osceola County or Sheriff Weber. Finally, the Department argues that decisions of federal district courts and appellate courts in the Eighth Circuit have consistently held that sheriffs' departments and police departments are not generally suable.

The Dorrs argue that the statute identifying the entity with the power to issue permits to carry weapons, IOWA CODE § 724.11, is ambiguous as to whether the "sheriff" or the "sheriff's department" makes and enforces the rules and regulations required under that section. The Dorrs then make an extensive fact-based argument about who may have such authority here, pointing to supposed denials by Osceola County and Sheriff Weber, in their Answer to the First Amended Complaint, that either of them is responsible for implementation of or creation of policies concerning the statutes providing for permits to carry weapons, and to supposedly inconsistent statements by and about an attorney as to whether the attorney was retained by the Sheriff, the Sheriff's Department, or the Osceola County Public Safety Commission to give advice on issuance of such permits. This evidence leads the Dorrs to the conclusion that the Osceola County Sheriff's Department may be the entity that actually makes the pertinent rules and, thus, has the power to sue or be sued pursuant to *Kasparek*. The Dorrs also attempt to distinguish the federal cases cited by the movants on the ground that none of those cases involved a statute, such as IOWA CODE § 724.11, that delegates the authority to make permit determinations to a specific—albeit ambiguously defined—agent, which may be either the "sheriff" or the "sheriff's department." Finally, the Dorrs argue that, by providing for "home rule" by municipalities, such as Osceola County, the Iowa legislature has delegated to the county the power to organize a sheriff's department, and that the Osceola County Sheriff's Department here has developed and enforced its own policies to effect a state law as an agent of the state, not the County. Thus, the Dorrs contend that, by acting as an agent of

the State to enforce laws through implementation of its own policies, separate and distinct from the policies of the County, the Osceola County Sheriff's Department is a suable person under 42 U.S.C. § 1983.

### 2. *Analysis*

The Osceola County Sheriff's Department is correct that Rule 17(b)(3) of the Federal Rules of Civil Procedure provides that capacity to sue or be sued, in the circumstances presented here, is to be determined "by the law of the state where the court is located." Thus, the question is whether applicable state law gives the Department the capacity to sue or be sued. The Dorrs argue that there is some ambiguity under the applicable state statutes as to what entity is given the authority to issue the permits in question, so that state law does give the Osceola County Sheriff's Department the capacity to be sued for its actions in denying such permits.

The court finds, however, that the Dorrs' argument that the Osceola County Sheriff's Department has the capacity to sue or be sued falls apart on its initial premise, that there is some ambiguity as to the entity given the authority to issue permits to carry weapons. As the Iowa Supreme Court has recently explained,

> When confronted with the task of determining the meaning of a statute, we have stated:
>> The goal of statutory construction is to determine legislative intent. We determine legislative intent from the words chosen by the legislature, not what it should or might have said. Absent a statutory definition or an established meaning in the law, words in the statute are given their ordinary and common meaning by considering the context within which they are used. Under the guise of construction, an interpreting body may not extend, enlarge or otherwise change the meaning of a statute.

13

> *Auen v. Alcoholic Beverages Div.,* 679 N.W.2d 586, 590 (Iowa 2004) (citations omitted). The interpretation of a statute requires an assessment of the statute in its entirety, not just isolated words or phrases. *State v. Young,* 686 N.W.2d 182, 184-85 (Iowa 2004). Indeed, "we avoid interpreting a statute in such a way that portions of it become redundant or irrelevant." *T & K Roofing Co. v. Iowa Dep't of Educ.,* 593 N.W.2d 159, 162 (Iowa 1999) (citation omitted). We look for a reasonable interpretation that best achieves the statute's purpose and avoids absurd results. *Harden v. State,* 434 N.W.2d 881, 884 (Iowa 1989).

*Schadendorf v. Snap-On Tools Corp.*, 757 N.W.2d 330, 337-38 (Iowa 2008). Thus, the court's role is, first, to determine whether the meaning of the statute is plain, and if so, to give effect to that plain meaning. *See State v. Public Employment Relations Bd.*, 744 N.W.2d 357, 360-61 (Iowa 2008) ("When we interpret a statute, our primary goal is to ascertain the legislature's intent. *State Pub. Defender v. Iowa Dist. Ct.*, 663 N.W.2d 413, 415 (Iowa 2003). To determine the legislature's intent, we first examine the language of the statute. *Id.* 'If the statutory language is plain and the meaning clear, we do not search for legislative intent beyond the express terms of the statute.' *Horsman v. Wahl*, 551 N.W.2d 619, 620-21 (Iowa 1996)."); *Birchansky Real Estate, L.C. v. Iowa Dep't of Public Health*, 737 N.W.2d 134, 139 (Iowa 2007) ("'If the statute's language is clear and unambiguous, we apply a plain and rational meaning consistent with the subject matter of the statute.'") (quoting *ABC Disposal Sys., Inc. v. Dep't of Natural Res.*, 681 N.W.2d 596, 603 (Iowa 2004)).

The statute defining the entity with power to issue permits to carry weapons provides, in pertinent part, as follows:

> Applications for permits to carry weapons shall be made *to the sheriff of the county* in which the applicant resides. Applications from persons who are nonresidents of the state,

> or whose need to go armed arises out of employment by the state, shall be made to the commissioner of public safety. In either case, *the issuance of the permit shall be by and at the discretion of the sheriff or commissioner*, who shall, before issuing the permit, determine that the requirements of sections 724.6 to 724.10 have been satisfied. . . .

IOWA CODE § 724.11 (emphasis added). The statute plainly and unambiguously gives *the sheriff*, and only *the sheriff*, the authority to receive an application for a permit to carry a weapon and the discretion to issue (or deny) such a permit in the circumstances presented here, where the applicant is a resident of the county. Giving the words "the sheriff" their ordinary meaning, *see Schadendorf*, 757 N.W.2d at 337-38, the phrase does not include or remotely suggest that it includes "the sheriff's department." Because this language is clear, this court will not search further for some supposed ambiguity as to the entity with authority to issue permits to carry firearms. *See Public Employment Relations Bd.*, 744 N.W.2d at 360-61. It would be improper for this court, under the guise of construction, to extend, enlarge or otherwise change the meaning of the statute to include "the sheriff's department" as an issuing authority. *Schadendorf*, 757 N.W.2d at 337-38 (citing *Auen*, 679 N.W.2d at 590).

Moreover, the Dorrs' fact-based contentions are not properly before the court on a Rule 12(b)(6) motion to dismiss, because they are based on matters outside of the pleadings. *See* Plaintiffs' Affidavit and Exhibits In Support Of Plaintiffs' Brief In Opposition To the Defendant Osceola Sheriff's Department and "Successors" Fed. R. Civ. P. 12(b)(6) Motion For Dismissal (docket no. 25). The court declines to consider matters outside of the pleadings or to convert the present motion to dismiss into a motion for summary judgment. *See* FED. R. CIV. P. 12(d); *Skyberg*, 5 F.3d at 302 n.2 (even where matters outside of the pleadings are presented to the court, a motion to dismiss is not

15

converted into a motion for summary judgment "where the district court's order makes clear that the judge ruled only on the motion to dismiss," and where the district court has made the posture of its disposition clear, the appellate court will "treat the case as being in that posture").

Looking only at the pleadings, as the court must on a Rule 12(b)(6) motion to dismiss, the First Amended Complaint does not give the merest suggestion of *facts* that make it plausible that the Osceola County Sheriff's Department, rather than Sheriff Weber, made the decisions or developed any policies regarding applications for permits to carry weapons, or *facts* that make it plausible that any policies of the Osceola County Sheriff's Department were imposed upon Sheriff Weber, rather than Sheiff Weber making and imposing such policies on the Osceola County Sheriff's Department. To put it another way, the First Amended Complaint contains no allegations of any statute or any other authority or any *facts* that give the Osceola County Sheriff's Department the power to make and enforce any rules and regulations, independent of the Sheriff, such that it might, itself, have the power to sue or be sued concerning the exercise of such power, and was not merely an instrumentality of the Sheriff. *See Kasparek v. Johnson County Bd. of Health*, 288 N.W.2d 511, 514-15 (Iowa 1980) (a county board of health had the power to sue or be sued, in the absence of an express statement of such power, because by statute, it had the power to make and enforce rules and regulations independent of the county). Here, the First Amended Complaint merely makes conclusory allegations that Sheriff Weber acted pursuant to policies of the Osceola County Sheriff's Department. Such conclusory allegations are not enough to state a claim against the Osceola County Sheriff's Department, that is, to demonstrate that the Osceola County Sheriff's Department is a legal entity that can be sued. *See Bell Atlantic*, 550 U.S. at 555-56 & 570.

The Dorrs have failed to state a claim against the Osceola County Sheriff's Department, and the motion to dismiss any claims in the First Amended Complaint against the Osceola County Sheriff's Department will be granted.

### C. Claims Against The "Successors"

#### 1. *Arguments of the parties*

The movants seek dismissal of the "Successors" to Sheriff Weber on the ground that no such "successors" exist or are identifiable until there is a new sheriff. Thus, they contend that there are no "successors" to be served and no one to sue. The Dorrs argue that they have pleaded a claim for injunctive relief requiring Sheriff Weber and his successors to honor their constitutional rights. They argue that granting the motion to dismiss the "Successors" would allow Sheriff Weber to negate any injunctive relief simply by resigning. They argue that Sheriff Weber's "Successors" must be bound by the results of this litigation.

#### 2. *Analysis*

The Dorrs' argument concerning the necessity of naming the "Successors" and retaining them in this litigation is misguided, if not complete flummadiddle. Any injunctive relief that the court might grant directing Sheriff Weber to immediately issue a nonprofessional permit to carry a weapon to Paul Dorr or Alexander Dorr would not last in perpetuity. IOWA CODE § 724.7 provides that a nonprofessional permit to carry weapons issued "shall be for a definite period as established by the issuing officer, but in no event shall exceed a period of twelve months." The court cannot determine in this litigation that, upon each and every application for renewal that might occur in the future, in perpetuity, the Dorrs will necessarily meet the requirements of IOWA CODE § 724.7 or IOWA CODE § 724.8, or that legitimate reasons will not exist to deny their future

applications for such permits.  In the meantime, during the pendency of this litigation, Sheriff Weber cannot defeat any claim by dying, resigning, or otherwise being removed from office, because Rule 25(d) of the Federal Rules of Civil Procedure provides for automatic substitution of a successor upon the death, resignation, or other cessation of office by the current holder of a public office.  The court also agrees with the movants that the "Successors" to Sheriff Weber cannot be identified, let alone served, so there is no such person or persons to sue.

Therefore, the motion to dismiss will also be granted as to the "Successors," because the present nonexistence of any such entities stands as an insuperable bar to claims against them.  *See Benton* 524 F.3d at 870 ("Where the allegations show on the face of the complaint that there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." (Citing *Parnes*, 122 F.3d at 546).

### III.  CONCLUSION

Upon the foregoing,

1. The November 21, 2008, Motion To Dismiss (docket no. 18) by defendants Osceola County Sheriff's Department and "Successors" to Sheriff Weber is **denied as moot**, in light of the filing on November 19, 2008, of the plaintiffs' First Amended Complaint (docket no. 18), and the filing on December 1, 2008, of a Motion To Dismiss by the same movants addressed to the First Amended Complaint; and

2. The December 1, 2008, Motion To Dismiss First Amended Complaint (docket no. 21) by the Osceola County Sheriff's Department and the "Successors" to

Sheriff Weber is **granted**, and both movants are **dismissed** pursuant to Rule 12(b)(6) for failure to state a claim against them on which relief can be granted.

**IT IS SO ORDERED.**

**DATED** this 7th day of July, 2009.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA