UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| PAUL DOOR, AND ALEXANDER DORR, individually and on behalf of all other persons similarly situated, | Court File No. 5:08-CV-04093 |
| Plaintiffs, | |
| vs. | **PRINCIPAL BRIEF OF PLAINTIFFS PAUL DORR AND ALEXANDER DORR FOR SUMMARY JUDGMENT, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF** |
| DOUGLAS L. WEBER, individually and in his capacity as Sheriff of Osceola County; and OSCEOLA COUNTY, IOWA, | |
| Defendants. | |

## TABLE OF CONTENTS

Page

Table of Authorities ................................................................................... iii

Issues Presented ......................................................................................... vii

Introduction ................................................................................................. 1

Factual Background ..................................................................................... 1

Legal Arguments and Authorities ............................................................... 3

    I.  Summary judgment and declaratory judgment is proper under the facts and circumstances of the instant case, since the actions of the Defendants Sheriff Weber and Osceola County are violative of state law and federal constitutional protections. ............................................................................ 3

    II.  Sheriff Weber may not deny Paul Dorr a weapon permit under Iowa Stat. § 724.8 based on Dorr's First Amendment-protected activities ............................................................................ 8

III. The denial of nonprofessional concealed weapon permits under
the facts of the instant case have denied Paul Dorr and Alexander
Dorr their Second Amendment right to bear arms........................................ 13

IV. Paul Dorr and Alexander Dorr with their respective denials of
nonprofessional weapon permits were denied equal protection
under the laws and substantive due process abridging their
Fourteenth Amendment rights ........................................................................ 13

V. Sheriff Weber is a County officer and therefore, Osceola County is
a proper party for purposes of maintaining a § 1983 action for
monetary and declaratory relief against the County..................................... 16

Conclusion.......................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

**Constitutions**

United States Constitution, First Amendment ............................ 1, 10, 12, 14, 19, 20

United States Constitution, Second Amendment ........................... 1, 13, 19

United States Constitution, Fourteenth Amendment ....................... 1, 14, 15, 19, 20


**Federal Statutes**

28 U.S.C. § 2201 ................................................................................ 1, 3

42 U.S.C. § 1983 ........................................................ 1, 3, 4, 7, 16, 17, 18, 19

42 U.S.C. § 1988 ................................................................................ 1, 20


**State Statutes**

Iowa Code §331.501 ......................................................................... 16

Iowa Code §331.551 ......................................................................... 16

Iowa Code §331.601 ......................................................................... 16

Iowa Code §331.651 ......................................................................... 16

Iowa Code §331.751 ......................................................................... 16

Iowa Code § 724.7 ............................................................................ 4

Iowa Code § 724.8 ....................................................... 1, 4, 5, 6, 10, 12, 14, 17, 18, 20

Iowa Code § 724.8(1) ....................................................................... 10

Iowa Code § 724.8(1) - (6) ............................................................... 10

Iowa Code § 724.8 (4) ...................................................................... 8

Iowa Code § 724.8 (5) ...................................................................... 8

Iowa Code § 724.11..................................................................................................... 1

## Administrative Codes

Iowa Administrative Code § 91.4(1) ...................................................................... 5, 6

Iowa Administrative Code § 661-91(1)a.................................................................. 6

Iowa Administrative Code § 661-91.4.................................................................. 17

Iowa Administrative Code § 661-91.4(1)c .............................................................. 6

Iowa Administrative Code § 661-91.4(2) ................................................................ 5

## Rules of Court

Fed.R.Civ.P. 56(c)..................................................................................................... 3

## Cases

*Alley v. Angelone,* 962 F. Supp. 827 (E.D. Va. 1997) ...................................................... 4

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)........................................................ 3

*Buckley v. Valeo,* 424 U.S. 1 (1976) ................................................................................ 8

*Calvit v. Minneapolis Pub. Schs.,* 122 F.3d 1112 (8th Cir.1997) ...................................... 3

*Campbell v. Arkansas Dept. of Correction,* 155 F.3d 950, (8th Cir. 1998),
reh'g and suggestion for reh'g en banc denied, (Oct. 14, 1998)................................ 4

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ................................................................ 3

*Citizens United v. Federal Election Com'n,* -- U.S. --, 2010 WL 183856 US 2010
(Jan. 21, 2010) ..................................................................................................... 8

*City of Wapello v. Chaplin,* 507 N.W.2d 187 (Iowa App. 1993).................................. 15

*Clark v. Kellogg Co.,* 205 F.3d 109 (8th Cir. 2000) ........................................................ 3

*Cohen v. Norris,* 300 F.2d 24 (9th Cir.1962) .................................................................. 17

*Cunha v. City of Algona,* 334 N.W.2d 591 (Iowa 1983) ................................................. 17

*Daniels v. Williams,* 474 U.S. 327 (1986) ....................................................................... 19

*District of Columbia v. Heller,* ---U.S. ----, 128 S.Ct. 2783 (2008) ............................... 13

*Fry v. McCall,* 945 F. Supp. 655 (S.D.N.Y. 1996) ............................................................ 4

*Ganley v. Minneapolis Park & Recreation Bd.,* 491 F.3d 743 (8th Cir.2007) ................ 14

*Graves v. Ark. Dep't of Fin. & Admin.,* 229 F.3d 721 (8th Cir.2000) ............................... 3

*Gunter v. Morrison,* 497 F.3d 868 (8th Cir. 2007) .......................................................... 10

*Harris v. Angelina County, Tex.,* 31 F.3d 331 (5th Cir. 1994) .......................................... 4

*Krenik v. County of Le Sueur,* 47 F.3d 953 (8th Cir.1995) ................................................ 3

*Larkin v. St. Louis Housing Auth. Dev. Corp.,* 355 F.3d 1114 (8th Cir.2004) ............... 17

*Lewis v. Jacks,* 486 F.3d 1025 (8th Cir.2007) ................................................................. 14

*Mackinney v. Nielson,* 69 F.3d 1002 (9th Cir. 1995) ....................................................... 20

*McIntyre v. Page County Sheriff's Office,* 538 N.W.2d 305
(Iowa App. 1995) .................................................................................................... 5, 6, 7, 20

*Mems v. City of St. Paul, Dep't of Fire & Safety Servs.,*
224 F.3d 735 (8th Cir.2000) ............................................................................................... 3

*Monell v. Dept. of Soc. Serv.,* 436 U.S. 658 (1978). ...................................................... 17

*NAACP v. Alabama,* 357 U.S. 449, 460 (1958) ................................................................. 8

*Parratt v. Taylor,* 451 U.S. 527 (1981) .......................................................................... 17

*Richter v. Shelby County,* 745 N.W.2d 505 (Iowa 2008). .............................................. 16

*Roberts v. United States Jaycees,* 468 U.S. 609 (1984) .................................................... 8

*Shemaitis v. Froemke,* 189 F.2d 963 (7th Cir.1951) ...................................................... 17

*Sherrill v. Knight,* 569 F.2d 124 (D.C. Cir. 1977). ..........................................................11

*State ex rel. Cities Serv. Oil Co. v. Board of Appeals,*
21 Wis.2d 516, 124 N.W.2d 809 (1963) ...................................................................15

*Staub v. City of Baxley,* 355 U.S. 313 (1958) ...................................................................12

*Tozman v. City of Columvia Heights,* 268 F.3d 588 (8th Cir. 2001) ...............................15

*Warren v. City of Lincoln, Neb.,* 816 F.2d 1254 (8th Cir.1987) ...................................17

*Wedemeier v. City of Ballwin, Mo.,* 931 F.2d 24 (8th Cir.1991) ...................................17

*Will v. Michigan Dept. of State Police,* 491 U.S. 58 (1989) .................................. 4

*Wood v. Ostrander,* 879 F.2d 583 (9th Cir. 1989),
*cert. denied,* 498 U.S. 938 (1990) ......................................................................19, 20

## ISSUES PRESENTED

I.      A county sheriff denied permits to carry concealed weapons based on his discretion although the applicants met all necessary statutory criteria. For one applicant the denial was based on First Amendment activities. The other because of age, yet met the statutory age requirement. No criteria exists for discretionary decisions. Did the sheriff and county violate the First and Fourteenth Amendment rights of the affected applicants when evidence reflects an arbitrary, unreasonable, and unsubstantiated rationale connected to the denials?

II.     The Second Amendment confers the individual right to bear arms, but allows regulatory limitations to their use. A statutory scheme allows individuals to bear arms outside of the home as a concealed weapon. When a sheriff denies an applicant a permit to carry a concealed weapon based on conduct that has no rationale connection to the denial, was the applicant denied his Second Amendment right?

## INTRODUCTION

Plaintiffs Paul Dorr and Alexander Dorr seek summary judgment, declaratory judgment, and injunctive relief on their claims under 42 U.S.C. § 1983 and 1988, 28 U.S.C. § 2201, and the First, Second, and Fourteenth Amendments. Although meeting the statutory elements to obtain a concealed weapon permit under Iowa Stat. § 724.8, the Sheriff and the County revealed the acceptance of personal opinion, personal statutory opinion over the specific legislative mandates, a person's political free speech and association with a group critical of the county as valid discretionary reasons to deny permits. Here, the County nor the Sheriff established standards or criteria guide the use of "discretion" to curtail the likelihood of abuses resulting with an acceptance to violate individual constitutional protections.

Plaintiffs Paul Dorr's and Alexander Dorr's motions for summary judgment and declaratory judgment, and the award the of attorney fees should be granted.

## FACTUAL BACKGROUND

Defendant Sheriff Weber, as the sole County official under state law to make concealed weapon permit decisions,[1] denied Paul Dorr his application for a nonprofessional concealed weapon permit in 2007. Weber further stated to Dorr that if he reapplied in the future all applications would be denied. Weber, asserting declared "discretion" authority, denied Dorr's permit because he did not trust him,[2]

---

[1] Iowa Stat. § 724.11; "Applications for permits to carry weapons shall be made to the sheriff of the county in which the applicant resides … the issuance of the permit shall be by and at the discretion of the sheriff or commissioner, who shall, before issuing the permit, determine that the requirements of sections 724.6 to 724.10 have been satisfied."

[2] Depo. Ex. 1 (P. Dorr 2007 application). App. 182-83.

because others believed him to be a "village nut,"[3] his letters to the editor,[4] distribution of fliers,[5] and his association with the Osceola County Taxpayers Association.[6] Dorr is a community activist.[7] And, he is associated with the OCTA having worked for it to do research and campaign development. The OCTA had been particularly critical of the budget and salaries of the County's attorney and sheriff offices,[8] issues and positions with which Dorr agreed.[9]

Sheriff Weber, also denied Plaintiff Alexander Dorr's permit application, but solely because of his age — 18.[10] He personally believed 18 as too young.[11] The County however, had previously provided permits to individuals under the age of 21.[12] Sheriff Weber also stated that Alexander Dorr should not reapply for a permit until he reached the age of 21.[13]

As a result of the actions of Osceola County and Sheriff Weber, Paul Dorr and Alexander Dorr commenced the instant action.

---

[3] Weber Tr. 64 l. 1-2; 24-25 (Nov. 30, 2009). App.-64.
[4] *E.g.*, Dorr Tr. 24 l. 15-17 (Jan. 13, 2010). App.-338 .
[5] *E.g.*, Dorr Tr. 29 l. 3-5 (Jan. 13, 2010). App.-339.
[6] Weber Tr. 123 l. 2-15; 124 l. 17-19; 125 l. 11-22. App.-123-25.
[7] Dorr Tr. 12 l. 13-15; 22-24 (Nov. 30, 2009). App.-331.
[8] Dorr Tr. 21 l. 6-9; 22 l. 4-9 (Jan. 13, 2010). App.-337; Tr. 29 l. 19-20 (Nov. 30, 2009). App.-332.
[9] Dorr Tr. 29 l. 19-20 (Nov. 30, 2009). App.-332.
[10] Weber Tr. 34 l. 12-18. App.-34.
[11] Weber Tr. 34 l. 12-18. App.-34.
[12] Depo Ex. 11. App.-303-34.
[13] Depo. Ex. 3. App.-205.

## LEGAL ARGUMENT AND AUTHORITIES

**I. Summary judgment and declaratory judgment is proper under the facts and circumstances of the instant case, since the actions of the Defendants Sheriff Weber and Osceola County are violative of state law and federal constitutional protections.**

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[14] The moving party bears the burden of showing that the material facts in the case are undisputed.[15] The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party.[16] The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial.[17]

Because there exists a present and live controversy regarding the underlying constitutional questions presented in the Plaintiffs' Second-Amended Complaint, relief under the Declaratory Judgment Act is available.[18] Specifically, an action in federal court under 42 U.S.C. § 1983 against a state official in his official capacity,

---

[14] Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Clark v. Kellogg Co.,* 205 F.3d 109, 1082 (8th Cir. 2000).

[15] *Celotex,* 477 U.S. at 322; *Mems v. City of St. Paul, Dep't of Fire & Safety Servs.,* 224 F.3d 735, 738 (8th Cir.2000).

[16] *Graves v. Ark. Dep't of Fin. & Admin.,* 229 F.3d 721, 723 (8th Cir.2000); *Calvit v. Minneapolis Pub. Schs.,* 122 F.3d 1112, 1116 (8th Cir.1997).

[17] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir.1995).

[18] 28 U.S.C. § 2201 states, "In a case of actual controversy within its jurisdiction… any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested parties seeking such declaration, whether or not further relief is or could be sought."

which seeks declaratory or injunctive relief, is not barred by the Eleventh

Amendment[19] as such actions are not treated as actions against the state.[20]

Iowa Code § 724.7 provides for the issuance of permits to carry weapons

within Iowa:

> Any person who can reasonably justify going armed may be issued a
> nonprofessional permit to carry weapons.  Such permits shall be on a form
> prescribed and published by the commissioner of public safety, which shall be
> readily distinguishable from the professional permit, and shall identify the
> holder thereof, and state the reason for the issuance of the permit, and the
> limits of the authority granted by such permit.  All permits so issued shall be
> for a definite period as established by the issuing officer, but in no event shall
> exceed a period of twelve months.

Iowa Code § 724.8 establishes the criteria for eligibility for a nonprofessional

permit to carry weapons:

> No person shall be issued a professional or nonprofessional permit to
> carry weapons unless:
>
> 1.  The person is eighteen years of age or older.
>
> 2.  The person has never been convicted of a felony.
>
> 3.  The person is not addicted to the use of alcohol or any
>     controlled substances.
>
> 4.  The person has no history of repeated acts of violence.
>
> 5.  The issuing officer reasonably determines that the applicant
>     does not constitute a danger to any person.

---

[19] *Harris v. Angelina County, Tex.,* 31 F.3d 331 (5th Cir. 1994), reh'g and suggestion for reh'g en banc denied, (Oct. 13, 1994); *Campbell v. Arkansas Dept. of Correction,* 155 F.3d 950 (8th Cir. 1998), reh'g and suggestion for reh'g en banc denied, (Oct. 14, 1998).  The Eleventh Amendment barred a former employee's claims under 42 U.S.C. § 1983 against state officials in their official capacities, for allegedly discharging her in violation of her free speech and due process rights, to the extent that such claims sought money damages, but not to the extent they sought her reinstatement. *Fry v. McCall,* 945 F. Supp. 655 (S.D.N.Y. 1996).
[20] *Will v. Michigan Dept. of State Police,* 491 U.S. 58 (1989); *Alley v. Angelone,* 962 F. Supp. 827 (E.D. Va. 1997).

6. The person has never been convicted of any crime defined in chapter 708, except "assault" as defined in section 708.1 and "harassment" as defined in section 708.7.

These factors delineate what "must not exist for someone to be issued or to keep a permit."[21]  In the one Iowa appellate court case analyzing § 724.8, the court in *McIntyre v. Page County Sheriff's Office,* the Sheriff revoked a permit because of the history of violent behavior of the permittee, although the person was over eighteen years old, was never convicted of a felony; and the sheriff had no information of the permitee abusing alcohol or drugs or any controlled substance.[22]  In particular, the *McIntyre* trial court found the permitee had been involved in numerous domestic disputes with his ex-wife, her friends, family and found guilty of domestic abuse, a conviction later overturned.[23]

In the Court's analysis, it found that "reasons to revoke may be the same as reasons not to issue"[24] but, in the sheriff's denial of a permit "because of certain conduct … the conduct must have a rational connection to the denial."[25]  In addition, to deny a permit "requires more than the sheriff's personal opinion."[26]

Likewise, Iowa Administrative Code § 661-91.4(2) governing weapons permits allows the sheriff to "use discretion in determining additional criteria for issuance of a permit pursuant to subrule 91.4(1).  The sheriff may restrict or limit the authority

---

[21] *McIntyre v. Page County Sheriff's Office,* 538 N.W.2d 305, 307, 308 (Iowa App. 1995).
[22] *Id.* at 308.
[23] *Id.*
[24] *Id.* at 307.
[25] *Id.* at 308.
[26] *Id.* at 308.  Although the Court also found that § 724.8 "does not require the issuance of a permit" the Dorrs contend that if all criteria are met, a permit must be issued.  *Id.*

granted by nonprofessional permits."  Subrule 91.4(1) delineates additional requirements, some mandatory,[27] and others optional.[28]

Defendant Sheriff Weber and the County failed to implement any known criteria governing the procedures for the issuance of a weapons permit.[29] Nevertheless, under the governing statute, Iowa courts have determined the need for a rational connection to the denial and something greater than the sheriff's personal opinion.  In the instant case, Sheriff Weber abused his discretion and in so doing violated the constitutional rights of Paul Dorr and Alexander Dorr.

A government act is illegal if lacking in substantial evidence, based on the application of an incorrect rule of law, or 'unreasonable, arbitrary, or capricious.'"[30]

First, Weber believes that a person could pass all the factors under § 724.8, and the sheriff could still deny the permit application based on his own discretion.[31] Although Weber asserted that there are no limitations to his discretion,[32] he also maintained discretion as relevant when based on the person's "reputation in the community, their neighborhood."[33] This is established, according to Weber, upon their mental state, how they behave, and how they treat other people.[34] Thus, the

---

[27] *E.g.,* Iowa Admin. Code § 661-91(1)*a.*
[28] Iowa Admin. Code § 661-91.4(1)*c.*
[29] Weber Tr. 15, l.6-8; 16, l.20-23; 17 l.3-9; 27 l.21-25; 30 l.9-11; 46 l. 15-25; 47 l. 17-20; 51 l.19-22; 55 l. 3-5. App.-15-17, 27, 30, 46, 47, 51, 55.
[30] *McIntyre,* 538 N.W.2d at 307.
[31] Weber Tr. 20 l.18-23. App.-20.
[32] Weber Tr. 17 l. 3-9. App.-17.
[33] Weber Tr. 21 l.19-21. App.-21.
[34] Weber Tr. 23 l. 17-18. App.-23.

applicant has the burden of proof[35] to convince Weber that the applicant is "a good guy or a good person."[36]

But, Weber's denial on unsubstantiated "concerns from [the] public" and that Weber "[doesn't] trust him"[37] are inconsistent with his discretionary authority and therefore Weber acted illegally. His decision was unreasonable, arbitrary, and capricious. Weber's elaboration, through deposition testimony sustains Dorr's arguments of illegality and supports Plaintiffs' § 1983 declaratory judgment action.

Second, Weber, in order to advance his view that Dorr's community reputation mattered despite the *McIntyre* test, Weber relied on hearsay -- basically unsubstantiated "concerns from the public" that the community considers Dorr "a village nut."[38] But those concerns, according to Weber himself, were directly attributed to Dorr's First Amendment activities:

> When he interjects himself into the media either by writing a letter to the editor, putting fliers on the windshields of cars while they're parked at church … sends out mass-emails or puts fliers … inside doors at home, then people talk about him. And then I hear things like, "Oh, that guy's a nut…."[39]

Thus, Weber, because Dorr was politically active and was perceived by others as a "community nut," denied Dorr his permit. There is nothing in this type of behavior that can be perceived as rationally related to the denial. And, certainly to the extent Weber relied on his personal opinion – that his opinion of Dorr's community reputation – Weber acted outside the law.

---

[35] Weber Tr. 28 l. 13-15. App.-28.
[36] Weber Tr. 28. 11-12. App.-28.
[37] Depo. Ex. 1 (P. Dorr's 2007 application). App.-182-83
[38] Weber Tr. 64 l. 1-2; 24-25. App.-64.
[39] Weber Tr. 64 l. 9-17. App.-64.

II.   **Sheriff Weber may not deny Paul Dorr a weapon permit under Iowa Stat. § 724.8 based on Dorr's First Amendment-protected activities.**

Paul Dorr, like other citizens of the United States, has a protected constitutional right to free speech and association under the First Amendment of the United States Constitution:

> "The First Amendment protects political association as well as political expression. The constitutional right of association explicated in *NAACP v. Alabama,* 357 U.S. 449, 460[, 78 S.Ct. 1163, 2 L.Ed.2d 1488] (1958), stemmed from the Court's recognition that '[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association.' Subsequent decisions have made clear that the First and Fourteenth Amendments guarantee "'freedom to associate with others for the common advancement of political beliefs and ideas," ' ...."[40]

As the United States Supreme Court has repeatedly stated, "implicit in the right to engage in activities protected by the First Amendment" is "a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends."[41]

In the instant action, Defendant Sheriff Weber denied Paul Dorr a permit in 2007 (and the future[42]) under § 724.8 (5)[43] although from 1998 to 2006, the County Sheriff granted and renewed his weapon permit. Further, despite Weber's claim that

---

[40] *Buckley v. Valeo,* 424 U.S. 1, 15 (1976); *see also, Citizens United v. Federal Election Com'n,* -- U.S. --, 2010 WL 183856 US 2010 (Jan. 21, 2010) at p. 25.

[41] *Roberts v. United States Jaycees,* 468 U.S. 609, 622 (1984); Depo. Ex. 3. App.-95; App.-205.

[42] Weber Tr. 95 l.15-17; Depo. Ex. 3. App.-95; App.-205.

[43] Weber's Answer to Plaintiffs' Second Amended Complaint however, reflects that the governmental denial also based on §724.8(4). Ans. ¶¶ 75-77. The Answer asserts persons reported fearing Dorr. Section 724.8(4) states a "person has no history of reported acts of violence." There is no evidence in the record to support this denial. *See* Weber Tr. 75 l. 12-17; App.-75, and *compare with* 77 l. 20-23. App.-77.

he "did not trust him [Dorr]," Weber admitted that there exists *no evidence* Paul Dorr

had done anything dangerous to other people:[44]

> [Weber]. …I don't trust him because … I feel he's mentally unbalanced, he's
> not normal … I perceive him as a social bully …
> Q. What do you mean by bullying?
> A. Intimidation, putting scathing, vile letters in the – the paper. …
> Q. You mean he's a bully in …writing letters.
> A. Excessively.[45]

Further, not only did Weber not make a reasonable determination of Dorr's

permit denial, Weber admitted that the rationale of denying his permit was based on

Dorr's association with the Osceola County Taxpayers Association and Dorr's

political activities and expressions of free speech through writings and editorials:

> [Weber] Well, you brought up the OCTA, Mr. Dorr's affiliation with that. He
> started sending out letters to the editor, e-mails, fliers on doors and cars,
> handing out brochures. …[46] He interjected himself into the public view or
> conscience ….[47]
>
> …[T]hat's what changed, is that he was a lot more active locally. I think a lot
> of his activities … The Gospel According to Paul Dorr, where he does work
> in other towns, other states and so forth…
>
> Q. And it was his work with the OCTA that brought him into your public
> view?
> A. Correct, and people started talking about it saying things like, "oh, that
> guy's a nut job.  Oh, that guy's whacko."[48]

In short, Weber's denial of the weapon permit was based on "retaliation."

Either the people retaliated through Weber or Weber retaliated directly against Dorr

---

[44] Weber Tr. 88 l. 22-25; 89 l.1-7. App.-88; App.-89.
[45] Weber Tr. 90 l. 7-24. App.-90.
[46] Weber Tr. 123 l.2-15. App.-123.
[47] Weber Tr. 124 l. 17-19. App.-124.
[48] Weber Tr. 125 l.11-22. App.-125.

for exercising his First Amendment protected rights.[49]  A reasonable official such as Weber would have known that by refusing to grant Dorr a permit based on his First Amendment activities, Weber violated Dorr's protected constitutional rights of freedom of expression and association.  By Weber's actions, Dorr further curtailed his free speech activities.[50]

Likewise, Weber's rationale, as articulated, failed to follow any of the constraints of the applicable statute standards as articulated under § 724.8(1) through (6), and specifically (5).  In other words, the statute does not contemplate the denial of an applicant's permit where there is no meaningful standard or policy to guide and apply discretion outside the individual elements expressed in the statute.  Weber admitted he nor the County articulated criteria regarding a denial based on subdivision 5.

Additionally, Weber does not feel constrained by the legislature's statutory expressions under § 724.8.  For instance, Weber denied Plaintiff Alexander Dorr *because* he was 18 years old -- although the statute allows an applicant to obtain a permit at age 18.[51]  Weber stated in writing that he would not consider another permit application until Alexander reached the age of 21.[52]  But, the County had previously granted permits to individuals under the age of 21.[53]

---

[49] *Gunter v. Morrison*, 497 F.3d 868 (8th Cir. 2007) (Facts show that the defendants retaliated against the plaintiff for suing the City, a violation of his constitutional right and entitlement to access to the courts.). Furthermore, by Weber's actions, he is not entitled to qualified immunity. *Id.*
[50] *E.g.*, Dorr Tr. 30 l. 3-13 (Jan. 13, 2010). App.-339.
[51] Weber Tr. 34 l.12-18. App.-34.
[52] Depo. Ex. 3. App.-205.
[53] Depo. Ex. 11. App.-303-05.

Weber stated that although he understood what the statute states, he "personally [doesn't] feel comfortable issuing a permit to carry to a person that's under 21."[54]  Weber provided his own style of statutory interpretation:

> I believe the Code also says that they have to be 21 to purchase a handgun, and they need to be 21 to purchase handgun ammunition, and it's just my feeling that [an] 18 year [old] is in the Code to provide – say if they became a security officer …that was under 21… that leaves the door open so you can give them a permit….[55]

Although Weber never asked Alexander Dorr about security employment or law enforcement,[56] he denied Dorr's permit because he was "too young."[57]  The lack of a standard of any kind, especially in Weber's own interpretation of legislative intent, reflects the arbitrary, unreasonable, and capricious nature of his acts.

In U.S. Court of Appeals for the District of Columbia Circuit case, *Sherrill v. Knight*,[58] a reporter challenged the denial of a White House press pass through an action against the Director of the Secret Service raising claims associated with the First Amendment.  In the court's analysis, the court stated that the First Amendment prohibits "arbitrary or content-based criteria for press pass issuance."[59]  While the court recognized the First Amendment's right to obtain information and that the right did not extend to every conceivable avenue a citizen seeks to employ that right,

---

[54] Weber Tr. 34 l. 25; 35 l. 1-6. App.-34-35. The record, however, reflects that other individuals who were under the age of 21 receiving permits in Osceola County.

[55] Weber Tr. 35 l.11-19. App.-35.

[56] Weber Tr. 36 l. 5-8. App.-36.

[57] Weber Tr. 34 l.12-18. App.-34.  Yet, Weber testified that with new applicants he would interview them. Tr. 29 l. 19-21. App.-29.  But again, denying established law under *McIntyre's* prohibition to rely upon personal opinion, Weber stated he relied upon "the gut feeling, intuition kicks in." *Id.* Nevertheless, he saw it not necessary to interview Alexander Dorr because of his age. Tr. 34 l. 12-18. App.-34.

[58] 569 F.2d 124 (D.C. Cir. 1977).

[59] *Id.* at 129.

the D.C. Circuit did affirm the lower court's determination that the failure to articulate and publish an explicit and meaningful standard governing the denial of White House press releases for security reasons violated the appellant's First Amendment rights.[60]

In essence, Weber believes, as the statute appears to sustain, that as Sheriff in Osceola County, decisions under Iowa Stat. § 724.8 to deny a person a permit may be made with virtually unbridled and absolute authority. The United States Supreme Court would question the validity of Weber's actions. For example, in *Staub v. City of Baxley*,[61] the Court considered an ordinance authorizing the mayor and the city council to refuse to grant a permit to solicit union members if they did not approve of its "effects upon the general welfare of citizens." In invalidating the law, the Court found the stated criteria as "without semblance of definitive standards or other controlling guides governing the action of the Mayor and Council in granting or withholding a permit."[62]

In the instant case, neither Weber nor the County have sought to articulate any criteria or policy to guide the discretionary actions of the Sheriff to avoid arbitrary, unreasonable, capricious, and illegal acts affecting the protected rights of individuals. As a result, Weber has absolute authority under Iowa law, without any semblance of definitive standards, to punish others for exercising their First

---

[60] *Id.* at 130 and 131-32 (The court remanded a portion of the trial court's judgment to require the development of "narrow and specific standards" for press release denials in accordance with the appellate court's opinion.)

[61] 355 U.S. 313 (1958).

[62] *Staub v. City of Baxley*, 355 U.S. at 222.

Amendment rights and for being under the age of 21 – as has been done here with Paul Dorr and Alexander Dorr.

### III. The denial of nonprofessional concealed weapon permits under the facts of the instant case have denied Paul Dorr and Alexander Dorr their Second Amendment right to bear arms.

The Second Amendment of the United States Constitution "conferred an individual right to keep and bear arms."[63] That is not to say there are no limitations to that right. However, when the government has established a statutory scheme for individuals to protect themselves, and an individual meets all of the criteria, but a government official arbitrarily, oppressively, unreasonable, and with intentional, purposeful discrimination— as in the instant case — then that person is deprived of the right to bear arms outside of the home vis-à-vis as a concealed weapon. There is no evidence in the record that Weber or the County can rely upon to show the Dorrs as anything other than law-abiding citizens to use arms in defense of the hearth, the home, or themselves while away from home. In this regard, the Dorrs have done nothing to suggest a greater limitation to their respective right under the Second Amendment to bear arms.

### IV. Paul Dorr and Alexander Dorr with their respective denials of nonprofessional weapon permits were denied equal protection under the laws and substantive due process abridging their Fourteenth Amendment rights.

---

[63] *District of Columbia v. Heller*, ---U.S. ----, 128 S.Ct. 2783, 2799 (2008). No doubt, the Defendants will assert this constitutional right could not have been infringed in 2007 at the time of the denials. But, the facts demonstrate that with the existing and continuing denial by the Defendants of the permits (*See* Weber Depo. 3) reflects an understanding of the rights complained of. It is especially true since the filing of the Complaint, Weber and the County have refused to recognize this Second Amendment right. Therefore, this right is clearly established and known to the Defendants.

Paul Dorr and Alexander Dorr allege violations of their Fourteenth Amendment right to equal protection as a result of Sheriff Weber's and Osceola County's code enforcement policies under Iowa Code § 724.8. The Equal Protection Clause of the Fourteenth Amendment requires state actors to treat similarly situated people alike and permits state actors to treat dissimilarly situated people dissimilarly.[64] As a threshold matter, it is understood that the Dorrs must establish that Weber and Osceola County treated them differently from similarly situated applicants.[65] In addition to unequal treatment, the Dorrs must also show intentional or purposeful discrimination.[66]

In the instant action, the evidence shows that the Dorrs were treated differently than others. Alexander Dorr's permit was denied a weapon's permit for no other reason than he was eighteen years old and Weber thought he "personally [doesn't] feel comfortable issuing a permit to carry to a person that's under 21."[67] Yet, facts reflect the County granted weapon permits to other individuals under the age of 21.[68]

Likewise, while Paul Dorr was denied a permit, the facts reflect that others similarly situated were granted permits.[69] Weber's testimony reflects an intentional discriminatory act against Dorr because of his First Amendment activities, including his association with the Osceola County Taxpayers Association. Other personal

---

[64] *Ganley v. Minneapolis Park & Recreation Bd.*, 491 F.3d 743, 747 (8th Cir.2007).
[65] *Id.*
[66] *See Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir.2007).
[67] Weber Tr. 35 l. 1-6. App.-35.
[68] Depo. Ex. 11. App.-303-05.
[69] Depo. Ex. 5. App.-208-241.

opinions of Weber's, like that in his denial to Alexander Dorr's permit, have no rational connection to deny Paul Dorr's permit.

The absence of County and Sheriff policies and criteria necessarily reflect an inherit infirmity allowing for intentional or purposeful discrimination. Thus, the intentionally and purposefully discriminatory acts in the exercise of governmental power in an arbitrary and oppressive manner violated the Dorrs substantive due process rights.[70] Here, the government was arbitrary in the constitutional sense.[71] "[T]he theory of substantive due process is properly reserved for truly egregious and extraordinary cases."[72] As the Iowa State Supreme Court itself has stated,

> The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination....[73]

Besides the fact of the arbitrary nature of Weber's decisions regarding the Dorrs, Weber specifically stated that he would not grant either Paul Dorr or Alexander Dorr a permit regardless how many times each applied. Thus, Weber's interpretation of the statute and its application are intentional and purposeful discrimination against Paul Dorr and Alexander Dorr.

Thus, Weber and the County have violated the Fourteenth Amendment right of both Paul and Alexander Dorr under the equal protection clause and as a violation of substantive due process.

---

[70] *Tozman v. City of Columvia Heights,* 268 F.3d 588, 593 8th Cir. 2001).
[71] *Id.*
[72] *Id.*
[73] *City of Wapello v. Chaplin,* 507 N.W.2d 187, 192-93 (Iowa App. 1993), quoting *State ex rel. Cities Serv. Oil Co. v. Board of Appeals,* 21 Wis.2d 516, 124 N.W.2d 809, 823 (1963).

**V. Sheriff Weber is a County officer and therefore, Osceola County is a proper party for purposes of maintaining a § 1983 action for monetary and declaratory relief against the County.**

Osceola County is a proper party defendant for the purposes of this § 1983 action for injunctive and declaratory relief against the County.

The law in Iowa is unclear and inconclusive regarding whether an elected sheriff is an officer of a county[74] regarding claims under 42 U.S.C. § 1983.  Sheriff Weber should be considered a county officer.  For instance, Iowa Code chapter 331 contains a division entitled "County Officers" and lists the county attorney, county auditor, county treasurer, county recorder, and county sheriff. Iowa Code §§ 331.751, 331.501, 331.551, 331.601, 331.651. The sheriff is elected by the people of Osceola County to carry out "general law enforcement" duties,[75] and the County pays the sheriff's salary and expenses to conduct the duties of the office.[76]  Furthermore, Weber believes his actions are made "on behalf of the county."[77]

Nevertheless, it is understood that local governing bodies can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.

Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person,"

---

[74] *Richter v. Shelby County*, 745 N.W.2d 505 (Iowa 2008).

[75] *See e.g.,* Weber Tr. 10 l. 8. App.-10.

[76] *E.g.,* Dorr Tr. 21 l. 15-17 (Jan. 13, 2010). App.-337.

[77] Weber Tr. 151 l. 5-8; l. 9-12 App.-151. (When asked whether granting or denying as within the scope of his "employment" Weber agreed.)

16

by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision-making channels.[78]   Further, a county may incur § 1983 liability if a failure to train its law enforcement officers causes a constitutional violation.[79]

Therefore, the governing general rule is that a § 1983 action against a county — here Osceola County — must allege a claim from which acts may be proved (1) that were under color of state law, (2) that deprived the plaintiff of rights secured by the United States Constitution or laws,[80] and (3) that implicate municipal involvement beyond respondeat superior.[81]

Under Administrative Code § 661-91.4, a person seeking a weapon permit must do so within the county of that person's residence.  Furthermore, the Code allows for the county sheriff to develop "additional criteria for issuance of a permit."

*Most importantly, Osceola County also has a Public Safety Commission which failed to adopt written criteria for implementation of Iowa Stat. § 724.8.*  It comprises two supervisors and a representative from each community in the county (Sibley has two additional

---

[78] *Cunha v. City of Algona,* 334 N.W.2d 591 (Iowa 1983); *see also, See Wedemeier v. City of Ballwin, Mo.,* 931 F.2d 24, 26 (8th Cir.1991); *Larkin v. St. Louis Housing Auth. Dev. Corp.,* 355 F.3d 1114, 1117 (8th Cir.2004) (liability can exist where a "policy or custom is the moving force behind a constitutional violation" or where training procedures or officer supervision is inadequate.)

[79] *Warren v. City of Lincoln, Neb.,* 816 F.2d 1254, 1263 (8th Cir.1987).

[80] *Parratt v. Taylor,* 451 U.S. 527, 532 (1981); *Cohen v. Norris,* 300 F.2d 24, 30 (9th Cir.1962); *Shemaitis v. Froemke,* 189 F.2d 963, 963 (7th Cir.1951).

[81] *Monell v. Dept. of Soc. Serv.,* 436 U.S. 658, 694 (1978).

representatives) and elected officials, such a mayors from County towns.[82]  Weber is not a member and cannot vote.[83]

In the instant case, the Osceola Commission did not develop any criteria or written criteria regarding the implementation of Iowa Stat. § 724.8 to county residents, especially as it related to discretionary rationale.[84]  Not only is the County and thus the Commission aware of the prohibitions of "a sheriff's personal opinion" and that a denial of a permit required "a rationale connection" to the decision, the County ignored recommendations to do so.[85]  Further, the Commission was made aware of the Dorr permit denial and, even after a recommendation to establish criteria, did nothing.[86]

The Commission, responsible for overseeing the responsibilities of the Sheriff, did nothing to control his conduct in the enforcement of governing laws that allow for weapon permits within the county that directly affect the county's residents ability to obtain weapon permits, or in its denial, to ensure other protected rights are not impeded.  In short, Osceola County through its Public Safety Commission also failed to provide criteria regarding how discretionary decisions under Iowa Stat. § 724.8 that affect Osceola County residents.[87]

Hence, this Court should find that Osceola County is liable for violations under 42 U.S.C. § 1983 as it pertains to the facts of the instant case.

---

[82] Weber Tr. 51 l. 3-8. App.-51.
[83] Weber Tr. 51 l. 13-15. App.-51.
[84] Weber Tr. 53, l. 10-13; 54 l. 18-21; 55 l.3-9. App.-53; 54; ;55.
[85] Weber Tr. 48 l.1-7; 52 l. 1-3; 53 l. 1-6, 10-13. App.-48; 52; 53.
[86] Weber Tr. 48 l.1-7; 53 l.1-6; 10-13. App.-48; 53.
[87] Weber Tr. 27 l. 21-25. App.-27.

Regardless of the Court's determination regarding Osceola, the instant §1983

action survives as against Sheriff Weber in his official capacity as Sheriff of Osceola

County.   To sustain a § 1983 civil rights action, the Dorrs must show "(1) that the

conduct complained of was committed by a person acting under the color of state

law; and (2) that [such] conduct deprived the plaintiff of a federal constitutional

right."[88] Here, it cannot be disputed that Sheriff Weber and the County acted under

state law.   The question regarding whether Sheriff Weber or the County engaged in

conduct that deprived Paul Dorr and Alexander Dorr of their respective

constitutional rights should also not be at issue as explained above.   It should not be

subject to question that Sheriff Weber's arbitrary acts regarding the denial of a

statutory concealed weapon permit committed during the course of pursuing his

official duties, he implicated the constitutional rights afforded to the Plaintiffs under

the First, Second, and Fourteenth Amendments.[89]   Furthermore, § 1983 "contains no

state-of-mind requirement independent of that necessary to state a violation of the

underlying constitutional right."[90]

Weber acted with deliberate indifference to the protected rights and interests

of the Dorrs.   As previously noted regarding whether a government official is entitled

to qualified immunity, requires a two-part inquiry: "(1) Was the law governing the

official's conduct clearly established? (2) Under the law, could a reasonable officer

---

[88] *Wood v. Ostrander,* 879 F.2d 583, 587 (9th Cir. 1989), *cert. denied,* 498 U.S. 938 (1990).
[89] *Daniels v. Williams,* 474 U.S. 327, 331 (1986) ("The touchstone of due process is protection of the individual against the arbitrary action of government.")
[90] *Daniels,* 474 U.S. at 330.

have believed the conduct was lawful?"[91]  "Common sense is relevant to the inquiry as to whether the contours of the right at issue were clearly established."[92]  Here, state law under *McIntyre v. Page County Sheriff's Office,* established how the denials of permits must be handled.  First Amendment and Fourteenth Amendment protections are well established.  Finally, in 2008 the Supreme Court clearly recognized a constitutional right to bear arms; nevertheless, the Defendants have continued to deprive the Dorrs permits to carry concealed weapons outside of their home.

## CONCLUSION

We ask for oral argument.

Summary judgment, declaratory judgment and injunctive relief for the Plaintiffs should be granted.  The actions of Defendant Weber in his official capacity and the complicity of the County resulted in an abuse of discretion impeding the fundamental constitutional protections of both Paul Dorr and Alexander Dorr.  Personal opinion, disregard of legislative factors, i.e., age, and the dislike of a person's political activities and associations has no place in governmental actions regarding a person's enjoyment of protected constitutional rights.

The Court should enter summary judgment accordingly, enjoining Sheriff Weber and any successor Sheriff of Osceola County from denying Paul Dorr and Alexander Dorr a weapon permit under Iowa Stat. § 724.8 without further order of the Court.  Additionally, the Court should award attorney's fees and costs to Plaintiffs under 42 U.S.C. § 1988.

---

[91] *Mackinney v. Nielson,* 69 F.3d 1002, 1005 (9th Cir. 1995).
[92] *Wood,* 879 F.2d at 590.

Dated: February 18, 2010.

s/Vincent J. Fahnlander
Vincent J. Fahnlander, Esq.
Erick G. Kaardal, Esq.
MOHRMAN & KAARDAL, P.A.
33 South Sixth Street, Suite 4100
Minneapolis, MN  55402
Telephone:  (612) 341-1074
Fax:  (612) 341-1076
E-Mail:  fahnlander@mklaw.com
E-Mail:  kaardal@mklaw.com
E-Mail:  grzybek@mklaw.com
E-Mail:  fincham@mklaw.com

ATTORNEYS FOR PLAINTIFFS

Copy to:

Douglas L. Phillips
Klass Law Firm, L.L.P.
Mayfair Center, Upper Level
4280 Sergeant Road, Suite 290
Sioux City, IA  51106

CERTIFICATE OF SERVICE
The undersigned certifies that the foregoing instrument
was served upon all parties to the above cause to each of
the attorneys of record herein at their respective addresses
disclosed on the pleading on February 18, 2010.
By: _____ U.S. Mail _____ facsimile _____ Hand delivered _____
Overnight courier
_____ Other        X  ECF
Signature *Mary L. Fincham*