IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| PAUL DORR, AND ALEXANDER DORR, INDIVIDUALLY AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED,<br><br>         Plaintiffs,<br>vs.<br><br>DOUGLAS L. WEBER, INDIVIDUALLY AND IN HIS CAPACITY AS SHERIFF, AND OSCEOLA COUNTY, IOWA,<br><br>         Defendants. | NO. 5:08-cv-040903-MWB<br><br><br>**DOUGLAS WEBER AND OSCEOLA COUNTY'S APPENDIX OF DOCUMENTS IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS ("RESISTANCE APPENDIX")** |

COME NOW Defendants, Douglas Weber and Osceola County, and submit the

following evidence in support of their Response to Plaintiffs' Statement of Material Facts:

**Table of Contents**

**Description**                                                                     **App. Page**

Defendants' Answers to Plaintiffs' Second Amended Complaint.......................................1

Paul Dorr's 2005 Application ...........................................................................................23

Deposition of Douglas Weber...........................................................................................25

Respectfully submitted,

_[signature]_

_____

Douglas L. Phillips
KLASS LAW FIRM, L.L.P.
Mayfair Center, Upper Level
4280 Sergeant Road, Suite 290
Sioux City, IA 51106
phillips@klasslaw.com
WWW.KLASSLAW.COM
712/252-1866
712/252-5822 fax

ATTORNEYS FOR DEFENDANTS
DOUGLAS WEBER AND OSCEOLA
COUNTY

Copy to:

Vincent J. Fahnlander
Erick G. Kaardal
33 South Sixth Street, Suite 4100
Minneapolis, MN 55402

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing
instrument was served upon all parties to the
above cause to each of the attorneys of record
herein at their respective addresses disclosed
on the pleading on ___March 11,_____, 2010
By: _____ U.S. Mail _____ facsimile
_____ Hand delivered _____ Overnight courier
_____ Other _____ ___X___ EFC

Signature _[signature]_

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| PAUL DORR, AND ALEXANDER DORR, INDIVIDUALLY AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>vs.<br><br>DOUGLAS L. WEBER, INDIVIDUALLY AND IN HIS CAPACITY AS SHERIFF, AND HIS SUCCESSORS, THE OSCEOLA COUNTY SHERIFFS DEPARTMENT, IOWA, AND OSCEOLA COUNTY, IOWA,<br><br>Defendants. | NO.  5:08-cv-040903-MWB<br><br><br>**DOUGLAS WEBER AND OSCEOLA COUNTY'S ANSWER TO SECOND AMENDED COMPLAINT**<br><br>**MOTION TO STRIKE CERTAIN PORTIONS OF THE SECOND AMENDED COMPLAINT**<br><br>**AND**<br><br>**JURY DEMAND** |

COME NOW Defendants Douglas Weber, Individually and in his Capacity as Sheriff, and Osceola County, Iowa, and for their Answer to Plaintiffs' Second Amended Complaint, state:

These Defendants deny the allegations contained in the Table of Contents on pp. i-iv of the Second Amended Complaint and move to strike the designation as a "Class Action" for the reason that Plaintiffs have failed to comply with any of the requirements of LR 23.

## INTRODUCTION

These Defendants deny the allegations in Plaintiffs' unnumbered Introductory paragraphs.

## JURSIDICTION

These Defendants admit that this Court has jurisdiction over the parties and the subject matter. These Defendants admit that venue is proper in this Court.  The remainder of

1

App. 1

Plaintiffs' Jurisdiction paragraph is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

## PARTIES

### Plaintiffs

1.    Paragraph 1 is admitted.

2.    Paragraph 2 is admitted.

### Defendants

3.    These Defendants admit that Douglas L. Weber is the duly elected sheriff of Osceola County and that the actions he has taken with respect to Plaintiffs were taken in his capacity as sheriff.  These Defendants admit that Sheriff Weber's office address is as stated in the Second Amended Complaint.  The remainder of paragraph 3 is denied.

4.    These Defendants admit that Osceola County is a governmental entity within the State of Iowa and that its address is as stated in the Second Amended Complaint.  The remainder of paragraph 5 is denied.

5.    These Defendants admit that the actions taken by Sheriff Weber with respect to Plaintiffs were taken under color of state law, but deny that they took the actions alleged by Plaintiffs.  The remainder of paragraph 6 is denied.

## CONSTITUTIONAL AND CODE PROVISIONS AT ISSUE

### First Amendment

6.    Paragraph 6 is admitted.

App. 2

**Second Amendment**

7.     These Defendants admit that the phrase quoted in the Second Amended Complaint is contained in the full text of the Second Amendment to the United States Constitution.

8.     These Defendants admit that the Second Amendment has been interpreted by some Courts in the manner alleged in the Second Amended Complaint, but deny that these interpretations give Plaintiffs the right to secure a permit as alleged in the Second Amended Complaint.

**Fourteenth Amendment**

9.     These Defendants admit that the phrase quoted in the Second Amended Complaint is contained in the full text of the Fourteenth Amendment to the United States Constitution, in Section 1.

10.     These Defendants admit that the Fourteenth Amendment confers to individuals the right to due process under the law and equal protection under the laws, but deny that Plaintiffs were deprived of their rights under the Fourteenth Amendment.

**Iowa Codes**

11.     These Defendants admit that Iowa Code § 724.7 governs the issuance of non-professional permits to carry weapons in the State of Iowa; and that the text of § 724.7 is accurately set forth in paragraph 11 of the Second Amended Complaint.  The remainder of paragraph 11 is denied.

12.     Defendants admit that the text of Iowa Code § 724.8 is accurately set forth in paragraph 12 of the Second Amended Complaint. Defendant admits that this provision of the

Code sets out eligibility criteria for issuance of a nonprofessional permit to carry weapons in the State of Iowa.  Defendants deny that these are the only criteria.

## CLASS ALLEGATIONS

Defendants move to strike paragraphs 13-21 of the Second Amended Complaint for the reason that Plaintiffs have done nothing to comply with the Class Action requirements of LR 23.

13.     Paragraph 13 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.  These Defendants deny that there are any others who are similarly situated.

14.     Paragraph 14 is denied.

15.     Paragraph 15 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

16.     Paragraph 16 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

17.     Paragraph 17 is denied.

18.     Paragraph 18 is denied. The only fact common to members of the purported class is the fact that they may have been denied a permit by Sheriff Weber.  The reasons for denial are unique to the individual applicant(s), and thus, the purported class has little in common.

19.     Paragraph 19 is denied.

20.     Paragraph 20 is denied. This case has been pending since October of 2008 and Plaintiffs have done nothing to comply with the Class Action requirements of LR 23.

21.     Paragraph 21 is denied.

# FACTS

### Paul Dorr is engaged in controversial public issues in Iowa exposing him to threats against him for holding or supporting certain views and opinions

These Defendants deny the introductory allegations in this section of the Second Amended Complaint.

22.    Paragraph 22 is admitted.

23.    Paragraph 23 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

24.    Paragraph 24 is admitted.

25.    Paragraph 25 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

26.    Paragraph 26 is denied.

27.    Paragraph 27 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

28.    Paragraph 28 is admitted.

29.    Paragraph 29 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

### Since 2001 the Sheriff's Department issued Dorr a permit to carry a weapon, but denied his permit application in 2007

These Defendants have no information for the years 2001-2004, and accordingly, the introductory allegations preceding paragraph 30 of the Second Amended Complaint are denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted. The introductory allegations preceding paragraph 30 of the Second Amended Complaint are admitted with respect to the years 2005, 2006 and 2007.

KLASS LAW FIRM, L.L.P.

5

30.     These Defendants have no information for the years 2001-2004, and accordingly, that portion of paragraph 30 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted. Paragraph 30 is admitted with respect to the years 2005 and 2006.

31.     These Defendants have no information for the years 2001-2004, and accordingly, that portion of paragraph 31 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted. Paragraph 31 is admitted with respect to the years 2005 and 2006.

32.     These Defendants have no information for the years 2001-2004, and accordingly, that portion of paragraph 32 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted. Paragraph 32 is admitted with respect to the years 2005 and 2006.

33.     Paragraph 33 is admitted.

34.     Defendants admit that Sheriff Weber denied Paul Dorr a concealed carry permit in 2007.  The remainder of paragraph 34 is denied.

**Sheriff had no factual or reasonable rationale to deny
Dorr a nonprofessional permit to carry a weapon in 2007**

These Defendants deny the introductory allegations preceding paragraph 35 of the Second Amended Complaint.

35.     Paragraph 35 is admitted.

36.     Paragraph 36 is admitted.

37.     Paragraph 37 is admitted.

38.     Paragraph 38 is denied.

39.     Paragraph 39 is admitted.

KLASS LAW FIRM,
L.L.P.

6

App. 6

40.     Paragraph 40 is admitted.

41.     Paragraph 41 is admitted.

42.     These Defendants deny that the quoted statements were made to Dorr but admit that Sheriff Weber made these statements.

### Debra Dorr is granted a permit in 2008

These Defendants admit the introductory statement preceding paragraph 43.

43.     Paragraph 43 is admitted.

44.     Paragraph 44 is admitted.

### Paul Dorr sought a nonprofessional permit to carry a weapon in 2008 but is denied the permit

These Defendants deny the introductory statement preceding paragraph 45.

45.     Paragraph 45 is denied.  Defendants admit that he applied in 2007.

46.     Paragraph 46 is denied.  Defendants admit that he applied in 2007.

47.     Paragraph 47 is denied.

### Dorr personally and through his consulting business engaged in political challenges with the Osceola County Sheriff's Department and the County Attorney's Office

These Defendants deny the introductory allegations preceding paragraph 48 for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

48.     Paragraph 48 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

49.     Paragraph 49 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

50.     Paragraph 50 is admitted.

KLASS LAW FIRM, L.L.P.

51.     Paragraph 51 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

52.     Paragraph 52 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

53.     Paragraph 53 is denied.

### Alexander Dorr sought a nonprofessional permit to carry a weapon in 2008 but is denied the permit

These Defendants deny the allegations in the introductory statement preceding paragraph 54.

54.     Paragraph 54 is denied.  Defendants admit that he applied in 2007.

55.     Paragraph 55 is admitted. Defendants admit that he applied in 2007.

56.     Paragraph 56 is denied.  Defendants admit that he applied in 2007

57.     Paragraph 57 is admitted.

### COUNT I

### Against Sheriff Weber

### Sheriff Weber's denial to grant the Dorrs a nonprofessional permit to carry a weapon is a violation of due process

### (Violation of the Second and Fourteenth Amendments of the United States Constitution)

### Sheriff Weber cannot provide Paul Dorr with documentation or other information to substantiate claims that citizens are fearful of Dorr

These Defendants deny the introductory allegations preceding paragraph 58.

58.     These Defendants restate their answers to paragraphs 1 through 57 of the Second Amended Complaint.

59.     These Defendants admit that under certain circumstances the Second Amendment has been construed by Courts to provide as alleged in the Second Amended Complaint.

60.     Paragraph 60 is admitted.

61.     Paragraph 61 is denied.

62.     Paragraph 62 is admitted.

63.     Paragraph 63 is admitted.

64.     These Defendants admit that the quoted statements were made, but deny that they were made to Paul Dorr.

### Dorr met all criteria under Iowa Code § 724.8 to be granted a nonprofessional permit to carry a weapon

These Defendants deny the allegations in the introductory paragraph preceding paragraph 65.

65.     Paragraph 65 is denied.

66.     Defendants admit that Iowa Code § 724.8 establishes criteria for eligibility to hold a nonprofessional permit to carry a concealed weapon but deny that these are the only criteria.

67.     Paragraph 67 is admitted.

68.     Paragraph 68 is denied.

69.     Paragraph 69 is admitted.

70.     Paragraph 70 is admitted.

71.     Paragraph 71 is admitted.

72.     Paragraph 72 is admitted.

73.     Paragraph 73 is admitted.

74.     Paragraph 74 is admitted.

75.     Paragraph 75 is denied.  These Defendants state affirmatively that citizens have reported they fear Paul Dorr.

76.     Paragraph 76 is denied.  These Defendants state affirmatively that citizens have reported they fear Paul Dorr.

77.     Paragraph 77 is denied.

78.     Paragraph 78 is denied.

79.     Paragraph 79 is admitted.

80.     Paragraph 80 is admitted.

**Dorr's engagement in controversial political issues
and threats made against him substantiated a need
for a nonprofessional permit to carry a weapon**

These Defendants deny the allegations in the introductory paragraph preceding paragraph 81.

81.     Paragraph 81 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

82.     Paragraph 82 is admitted.

83.     Paragraph 83 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

84.     Paragraph 84 is admitted.

**Sheriff Weber gave no reason to deny Dorr a permit in 2007 and 2008**

These Defendants deny the allegations in the introductory paragraph preceding paragraph 85.

85.     Paragraph 85 is admitted.

86.   Paragraph 86 is admitted with respect to 2007 but denied with respect to 2008.

87.   Paragraph 87 is denied.

88.   Paragraph 88 is denied.

**Sheriff Weber denied Alexander Dorr a nonprofessional
permit to carry a weapon and declared consideration of
new application only after his 21st birthday**

These Defendants admit the allegations in the introductory paragraph preceding paragraph 89.

89.   Paragraph 89 is denied.

90.   Paragraph 90 is denied.

91.   Paragraph 91 is admitted.

**Alexander Dorr met all criteria under Iowa Code § 724.8 to
be granted a nonprofessional permit to carry a weapon**

These Defendants deny the allegations in the introductory paragraph preceding paragraph 92.

92.   Paragraph 92 is denied.

93.   Defendants admit that Iowa Code § 724.8 establishes criteria for eligibility for a nonprofessional permit to carry a concealed weapon, but deny that these are the only criteria.

94.   Paragraph 94 is admitted.

95.   Paragraph 95 is denied.

96.   Paragraph 96 is admitted.

97.   Paragraph 97 is admitted.

98.   Paragraph 98 is admitted.

99.   Paragraph 99 is admitted.

KLASS LAW FIRM,
L.L.P.

11

100.    Paragraph 100 is admitted.

101.    Paragraph 101 is admitted.

102.    Paragraph 102 is admitted.

103.    Paragraph 103 is admitted.

104.    Paragraph 104 is denied.

105.    Paragraph 105 is denied.

106.    Paragraph 106 is admitted.

107.    Paragraph 107 is admitted.

**Sheriff Weber acted illegally and denied the Dorrs due process
and in so doing violated their right to keep and bear arms**

These Defendants deny the allegations in the introductory paragraph preceding
paragraph 108.

108.    Paragraph 108 is denied.

109.    Paragraph 109 is denied.

110.    Paragraph 110 is denied.

111.    Paragraph 111 is denied.

112.    Paragraph 112 is denied

## COUNT II

### Against Osceola County

### (Violation of the Second and Fourteenth Amendments
of the United States Constitution)

### Infringement of the Dorrs' right to due process
and to keep and bear arms

These Defendants deny the introductory allegations preceding paragraph 113.

113.    These Defendants restate their answers to Paragraphs 1 through 112 of the

KLASS LAW FIRM,
L.L.P.

12

Second Amended Complaint.

 114. Paragraph 114 is denied.

 115. Paragraph 115 is denied.

 116. Paragraph 116 is denied.

 117. Paragraph 117 is denied.

 118. Paragraph 118 is denied.

 119. Paragraph 119 is denied.

 120. Paragraph 120 is denied.

## COUNT III

### Against Sheriff Weber

### Violation of the First Amendment

### Sheriff Weber's denial to grant Dorr a nonprofessional permit to carry a weapon based on his association with a taxpayers group violated Dorr's First Amendment rights.

These Defendants deny the introductory allegations preceding paragraph 121.

 121. These Defendants restate their answers to Paragraphs 1 through 120 of the Second Amended Complaint.

 122. Paragraph 122 is admitted.

 123. Paragraph 123 is denied.

 124. Paragraph 124 is admitted.

 125. Paragraph 125 is admitted.

 126. These Defendants admit that Sheriff Weber and his predecessors granted Paul Dorr a nonprofessional permit to carry a concealed weapon for the years 2001-2006 because he met the criteria for eligibility.  The remainder of paragraph 126 is denied.

127.    These Defendants admit that Paul Dorr's application was denied in 2007.  The remainder of paragraph 127 is denied.

### Dorr's association with the Osceola County Taxpayers Association

128.    These Defendants admit that OCTA exists.  The remainder of paragraph 128 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

129.    Paragraph 129 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

130.    Paragraph 130 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

131.    Paragraph 131 and each sub-paragraph thereunder is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

132.    Paragraph 132 is admitted.

133.    Paragraph 133 is admitted.

134.    Paragraph 134 is admitted.

135.    Paragraph 135 is admitted.

136.    Paragraph 136 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

137.    Paragraph 137 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

138.    Paragraph 138 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

**First Amendment of the United States Constitution protects
freedom of speech and the right of association.**

139.    Paragraph 139 is admitted.

140.    Paragraph 140 is admitted, subject to the limitations placed on the exercise of this right by centuries of court decisions.

141.    Paragraph 141 is admitted, subject to the limitations placed on the exercise of this right by centuries of court decisions.

142.    Paragraph 142 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

143.    Paragraph 143 is denied.

144.    Paragraph 144 is denied.

145.    Paragraph 145 is denied.

146.    Paragraph 146 is denied.

147.    Paragraph 147 is denied.

148.    Paragraph 148 is denied.

149.    Paragraph 149 is denied.

150.    Paragraph 150 is denied.

151.    Paragraph 151 is denied.  The Court has already ruled that Plaintiffs have no claim against "successors."

## COUNT IV

### Against Sheriff Weber

**Sheriff Weber's denials to grant Dorr a nonprofessional permit to
carry a weapon violated his right to equal protection**

**(Violation of the Second and Fourteenth Amendments
of the United States Constitution)**

**Sheriff Weber granted a nonprofessional permit to carry weapons
to individuals including Paul Dorr's wife Debra Dorr**

These Defendants deny the introductory allegations preceding paragraph 152.

152.    These Defendants restate their answers to Paragraphs 1 through 151 of the

Second Amended Complaint.

153.    Paragraph 153 is admitted.

154.    Paragraph 154 is admitted.

155.    Paragraph 155 is admitted.

156.    Paragraph 156 is admitted.

157.    These Defendants admit that Sheriff Weber and his predecessors granted Paul

Dorr a nonprofessional permit to carry a concealed weapon for the years 2001-2006 because

he met the criteria for eligibility.  The remainder of paragraph 157 is denied.

158.    Paragraph 158 is admitted.

159.    Paragraph 159 is admitted.

**Sheriff Weber gave no reason to deny Paul Dorr a
permit to carry a weapon in 2007 and 2008**

These Defendants deny the introductory allegations preceding paragraph 160.

160.    Paragraph 160 is admitted.

161.    Paragraph 161 is denied.

162.    Paragraph 162 is denied.

**Sheriff Weber gave no reason to deny Alexander
Dorr a permit to carry a weapon in 2008**

These Defendants deny the introductory allegations preceding paragraph 163.

KLASS LAW FIRM,
L.L.P.

16

163.    Paragraph 163 is denied.

164.    Paragraph 164 is admitted.

165.    Paragraph 165 is denied.

**Sheriff Weber acted illegally and denied the
Dorrs equal protection under the law**

These Defendants deny the introductory allegations preceding paragraph 166.

166.    Paragraph 166 is denied.

167.    Paragraph 167 is denied.

168.    Paragraph 168 is denied.

169.    Paragraph 169 is denied.

170.    Paragraph 170 is denied.

171.    Paragraph 171 is denied.

## COUNT V

**Against Osceola County**

**(Violation of the First, Second and Fourteenth Amendments
of the United States Constitution)**

**Infringement of the Dorrs' right to equal protection under the law**

These Defendants deny the introductory allegations preceding paragraph 172.

172.    These Defendants restate their answers to paragraph 1 through 171 of the
Second Amended Complaint.

173.    Paragraph 173 is admitted with respect to Paul Dorr and Alexander Dorr.

174.    Paragraph 174 is denied.

175.    Paragraph 175 is denied.

176.    Paragraph 176 is denied.

KLASS LAW FIRM,
L.L.P.

17

177.    Paragraph 177 is denied.

178.    Paragraph 178 is denied.

179.    Paragraph 179 is denied.

## COUNT VI

**Declaratory Judgment invalidating Iowa Code provisions
as overly broad and vague governing determinations to a
nonprofessional permit to carry a weapon**

**Infringement of the First Amendment Right to Free Speech and to Association**

**(Violation of the First Amendment of the United States Constitution)**

These Defendants deny the introductory allegations preceding paragraph 180.

180.    These Defendants restate their Answers to paragraph 1 through 179 of the

Second Amended Complaint.

181.    Paragraph 181 is admitted.

182.    Paragraph 182 is admitted.

183.    Paragraph 183 is denied.

184.    These defendants admit that Sheriff Weber denied Paul Dorr's application for

a concealed carry permit in 2007.  The remainder of paragraph 184 is denied.

185.    Paragraph 185 is denied.

186.    Paragraph 186 is admitted.

187.    Paragraph 187 is denied.

188.    Paragraph 188 is admitted, subject to the limitations placed on the exercise of

this right by centuries of court decisions.

KLASS LAW FIRM,
L.L.P.

18

189.    Paragraph 189 is denied.

190.    Paragraph 190 is admitted.

191.    Paragraph 191 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

192.    Paragraph 192 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

193.    Paragraph 193 is denied.

194.    Paragraph 194 is denied.

195.    Paragraph 195 is denied.

196.    Paragraph 196 is denied.

## COUNT VII

**Declaratory Judgment invalidating Iowa Code provision as
overly broad and vague governing determinations to
a nonprofessional permit to carry a weapon**

**Infringement of Second Amendment Right to Keep and Bear Arms**

**(Violation of the Second Amendment of the United States Constitution)**

These Defendants deny the introductory allegations preceding paragraph 197.

197.    These Defendants restate their answers to Paragraphs 1 through 196 of the Second Amended Complaint.

198.    Paragraph 198 is admitted.

199.    Paragraph 199 is admitted.

200.    Paragraph 200 is denied.

201.    These Defendants admit that Paul Dorr was denied a permit to carry a

KLASS LAW FIRM,
L.L.P.

19

concealed weapon in 2007.  The remainder of Paragraph 201 is denied.

202.    Paragraph 202 is denied.

203.    Paragraph 203 is admitted.

204.    Paragraph 204 is denied.

205.    Paragraph 205 is denied.

206.    Paragraph 206 is admitted.

207.    Paragraph 207 is denied.

208.    These Defendants admit that the Second Amendment has been construed by Courts in the manner alleged, but deny that their actions violated the Second Amendment.

209.    Paragraph 209 is denied.

210.    Paragraph 210 is admitted.

211.    Paragraph 211 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

212.    Paragraph 212 is denied for lack of sufficient information upon which to form a belief as to the truth of the matters asserted.

213.    Paragraph 213 is denied.

214.    Paragraph 214 is denied.

215.    Paragraph 215 is denied.

216.    Paragraph 216 is denied.

## JURY TRIAL DEMANDED

217.    These Defendants restate their answers to paragraphs 1 through 213 of the Second Amended Complaint.

218.    These Defendants demand a jury trial.

KLASS LAW FIRM,
L.L.P.

20

WHEREFORE these Defendants pray that Plaintiffs' Second Amended Complaint be dismissed and all costs taxed to Plaintiffs.

## AFFIRMATIVE DEFENSES

1.      Plaintiffs' Second Amended Complaint fails to state a claim upon which relief can be granted.

2.      Douglas Weber is immune from suit.

3.      Issuance of the permits at issue is vested in the discretion of the sheriff by virtue of Iowa Code § 724.11.

4.      The sheriff may use discretion in determining additional criteria for issuance of a permit pursuant to the provisions of the Iowa Administrative Code.

5.      Douglas Weber had a rationale basis for the decisions he made with respect to the permits at issue in this case.

6.      Plaintiffs received all the process that they were due under the 14th Amendment.

7.      The fear of bullying, harassment and intimidation by Paul Dorr as expressed by citizens of Osceola County is a legitimate basis for denial of a permit.

8.      There are no similarly situated individuals to whom permits have been denied, and thus, there is no equal protection claim.

KLASS LAW FIRM,
L.L.P.

21

Respectfully submitted,


Douglas L. Phillips
KLASS LAW FIRM, L.L.P.
Mayfair Center, Upper Level
4280 Sergeant Road, Suite 290
Sioux City, IA  51106
phillips@klasslaw.com
WWW.KLASSLAW.COM
712/252-1866
712/252-5822 fax

ATTORNEYS FOR DEFENDANTS
DOUGLAS WEBER AND OSCEOLA
COUNTY

Copy to:

Vincent J. Fahnlander
Erick G. Kaardal
33 South Sixth Street, Suite 4100
Minneapolis, MN  55402

CERTIFICATE OF SERVICE
The undersigned certifies that the foregoing
instrument was served upon all parties to the
above cause to each of the attorneys of record
herein at their respective addresses disclosed
on the pleading on _____, 2010
By: _____  U.S. Mail          _____ facsimile
        _____  Hand delivered        _____ Overnight courier
        _____  Other                      _____ EFC

Signature _____

KLASS LAW FIRM,
L.L.P.

# STATE OF IOWA

## APPLICATION FOR PERMIT TO CARRY WEAPONS
### TYPE OR PRINT IN INK - MUST BE COMPLETED BY APPLICANT

☐ Professional Permit (WP1)  
☒ Nonprofessional Permit (WP2)

☐ Peace Officer Permit (WP7)  
☐ Reserve Peace Officer Permit (WP10)  
☐ Correctional Officer Permit (WP9)

☐ New Application  
☒ Renewal – Permit Number __187534__

Firearms Safety Training Certification Number or Peace Officer Certification Date : __31221__

Attach copy of WP0 Firearms Safety Training Program Certificate of Completion (except certified peace officer)

Name __Dorr__ __Paul__ __Robert__ Phone # ( __712__ ) __758__ - __3372__  
  (last)        (first)        (middle)

Other Names Ever Used (aliases) __N/A__

Residence __579 2nd St.__ __Ocheyedan__ __Iowa__ __51354__  
                             (city)              (state)      (zip)

Driver License or Non-Operator ID# __509 WW3353__ County of Residence __Osceola__

Birthdate __5__ / __15__ / __1956__ Age __49__ Sex __M__ Hgt __6'2"__ Wgt __290__ Hair __Br__ Eyes __Br__

## Authorization for Release - Weapon Permit Applications

I, __Paul R. Dorr__ , do hereby authorize a review and full disclosure of all records concerning myself, as required by Iowa Code chapter 724, to any duly authorized agent of an Iowa sheriff or the Commissioner of the Iowa Department of Public Safety, whether the said records are of a public, private or confidential nature.

The intent of this authorization is to give my consent for full and complete disclosure of records of psychiatric treatment, substance abuse treatment, consultation and/or court ordered involuntary hospitalization including hospitals, clinics, private practitioners, the U.S. Veteran's Administration and clerks of court, as necessary to verify that I meet the requirements of the state of Iowa and the United States for the acquisition and possession of a firearm, and shall not be disseminated for any other purpose.

I understand that any information obtained which is developed directly or indirectly, in whole or part, upon this release authorization will be considered in determining my suitability for obtaining a permit to carry or acquire weapons in the state of Iowa. I also certify that any person(s) who may furnish such information concerning me shall not be held accountable for providing accurate information, and I do hereby release said person(s) from any and all liability which may be incurred as a result of furnishing such information.

I understand that the information contained in these records will be used for no purpose other than those stated above, and will be kept strictly confidential by the office of the issuing official.

I understand that I may be convicted of a class "D" felony pursuant to Iowa Code section 724.10 if I make a false statement of material fact on this application.

I understand that all information provided on this application is considered public record and may be disclosed upon request.

_This "Signature On File" will be valid from this date and shall expire in one year._

Applicant Signature __Paul R. Dorr__      Date __June 27, 2005__  
WP5 Rev. 02/2003

**All of the following questions must be answered:**

Yes No

☐ ☒ 1. Have you ever been convicted of a felony?
☐ ☒ 2. Have you ever been convicted of the misdemeanor crime of domestic abuse assault?
☐ ☒ 3. Have you ever been convicted of the misdemeanor crime of assault in violation of individual rights (hate crime)?
☐ ☒ 4. Have you ever been convicted of the misdemeanor crime of assault on a peace officer, jailer, correctional officer, fire fighter or health care provider?
☐ ☒ 5. Have you ever been convicted of the misdemeanor crime of setting a spring gun or trap?
☐ ☒ 6. Have you ever been convicted of the misdemeanor crime of hazing?
☐ ☒ 7. Have you ever been convicted of the misdemeanor crime of stalking?
☐ ☒ 8. Are you addicted to the use of alcohol or any controlled substance?
☐ ☒ 9. Do you have a history of repeated acts of violence?
☐ ☒ 10. Have you ever been adjudged mentally incompetent?

If you answered yes to any of the above, please explain: _____

_____

_____

☒ ☐ 11. Are you a citizen of the United States? If not, provide country of citizenship and alien registration number: Country of citizenship: _____ Alien registration number: _____

## STATEMENT OF JUSTIFICATION
TYPE OR PRINT IN INK - MUST BE COMPLETED BY APPLICANT

This statement is to contain clear and convincing evidence that this applicant may be required to use deadly force to protect his/her life or the life of another. The issuing officer may accept or reject this application for a permit to carry based on this narrative and other considerations.

For protection on vendor business when temporarily
carrying large amounts of cash and general self-defense

_____

_____

Applicant Signature ~~Paul Kump~~     Date June 27, 2005

## EMPLOYER AUTHORIZATION

This section is to be completed by the employer of an applicant for a professional permit to carry weapons. This authorization affirms the above described justification for issuance as being an employment requirement.

Employer Name _____     Telephone _____

Employer Address _____

Employer Signature _____     Date _____

## ISSUING OFFICER
MUST BE COMPLETED BY SHERIFF OR COMMISSIONER OF PUBLIC SAFETY

Application: ☒ Approved ☐ Disapproved     Date 07-21-05

Reason Disapproved: _____

Signature ~~Taylor AWeber~~     ☒ Sheriff of Osceola County, Iowa
☐ Commissioner of the Iowa Department of Public Safety
☐ New Fee $ _____     ☐ Renewal Fee $ _____     ☐ Peace Officer/Correctional Officer - No Fee

App. 24

1               UNITED STATES DISTRICT COURT

2               NORTHERN DISTRICT OF IOWA

3   * * * * * * * * * * * * * * * * * *

4   PAUL DORR and ALEXANDER DORR,   *   File No. 5:08-CV-04093
    individually and on behalf of all

5   other persons similarly situated,   *

6           Plaintiffs,         *

7   vs.                          *      **DEPOSITION OF**

8   DOUGLAS L. WEBER, individually and *   **DOUGLAS L. WEBER**
    in his capacity as Sheriff, and his

9   successors, THE OSCEOLA COUNTY     *
    SHERRIF'S DEPARTMENT, IOWA, and

10   OSCEOLA COUNTY, IOWA,         *

11           Defendants.        *
    * * * * * * * * * * * * * * * * * *

12

13   The deposition of Douglas L. Weber was taken on behalf of

14   the Plaintiffs at the Osceola County Courthouse in Sibley,

15   Iowa on Monday, November 30, 2009 commencing at 10:00 a.m.

16                   **APPEARANCES**

17   For the Plaintiffs:    MR. VINCENT J. FAHNLANDER
                      Attorney at Law

18                       33 South Sixth Street, Suite 4100
                      Minneapolis, Minnesota 55402

19

    For the Defendants:    MR. DOUGLAS L. PHILLIPS

20                       Attorney at Law
                      4280 Sergeant Road, Suite 290

21                       Sioux City, Iowa 51106

22   Other Appearances:     Paul R. Dorr

23

24   Reported By:   Jenna L. Mumm, CSR
                703 Jackson Avenue, Spirit Lake, Iowa 51360

25                 (712) 336-4125   (800) 551-5027

Fahnlander Cross-Examination

Jenna L. Mumm, CSR
(800) 551-5027

Multi-Page™

Deposition of Douglas L. Weber
11/30/09

Page 26

1 Q And have you received any-- any information about the
2 handgun permitting process from the Iowa Attorney General or
3 any other law enforcement bodies?
4 A Not the attorney general. From the Department of
5 Public Safety I've received some information. There's the--
6 basically talks about what the Code of Iowa states.
7 Q And when do you recall receiving information from the
8 Department of Public Safety?
9 A Well, in-- within the past two years.
10 Q And within the past two years, that takes us back to
11 November of '09. Is-- is that the time period or does it--
12 A November of '07?
13 Q I'm sorry, November of '07.
14 A Yeah, right.
15 Q Okay. So that's information you would have received
16 after you denied Paul Dorr's 2007 permit?
17 A Correct.
18 Q That's-- okay. And did you solicit some information
19 from the Department of Public Safety or did they send you
20 that information unsolicited?
21 A I-- I asked for it.
22 Q And why did you ask for that information?
23 A Just to see if there was something I wasn't aware of or
24 that I missed.
25 Q What do you mean by that?

Page 27

1 A Well, I just wanted to-- to verify that I was following
2 the Code. And the person there that oversees that is Sam
3 Knowles with a "K."
4 Q I'm sorry?
5 A Sam Knowles.
6 Q K-n-o-l-l-s?
7 A L-E-S, I think.
8 Q Okay.
9 A And he-- he pretty much reiterated the Code of Iowa and
10 then he said, "Also remember, Sheriff, that you can use your
11 discretion on permits to carry."
12 Q Okay. Was-- was that a communication you made about
13 Mr. Knowles specifically to-- in regard to Paul Dorr's
14 application?
15 A Correct. Yeah, that's why, yes.
16 Q Okay. Did the Iowa Sheriffs-- or I'm sorry. Let me
17 strike that. Did the Department of Public Safety give you
18 any information about how you reasonably determine whether
19 an applicant constitutes a danger?
20 A Not that I recall, no.
21 Q And has any other law enforcement provided you any
22 information about how you as the sheriff reasonably
23 determine whether an applicant constitutes a danger to any
24 person?
25 A Not that I recall.

Page 28

1 Q And that's just something that you believe you have the
2 discretion to determine?
3 A Yes.
4 Q Do you believe that you as the sheriff have any
5 obligation to conduct an investigation to determine what
6 constitutes a reasonable determination that an applicant
7 constitutes a danger?
8 A Could-- could you repeat that, please?
9 Q Sure.
10 A I want to make sure. (The last question was read
11 back.) I believe the applicant needs to convince me that
12 they're a good guy or a good person.
13 Q Okay. So the-- the applicant has the burden of proof,
14 in your mind?
15 A Yes.
16 Q And what-- what is the standard of that burden of
17 proof? Do you understand my question?
18 A I-- I don't know how to answer, sir.
19 Q Well, for example, in a criminal case you understand
20 that law enforcement has the burden to prove beyond a
21 reasonable doubt the guilt of a-- of a person before they're
22 convicted. You understand that--
23 A Yeah.
24 Q -- burden of proof, correct? Do you-- is that the same
25 burden of proof that you use in determining whether an

Page 29

1 applicant gets a permit or not?
2 A Well-- well, a criminal investigation is a different--
3 whole different animal, in my opinion.
4 Q Sure. I'm just trying to figure out, in your mind what
5 is the standard for an applicant to convince you that they
6 should get a permit? Is it--
7 A Well, it's not a written standard. It's-- I'm a cop.
8 I do have some intuition, some gut feelings, been a cop for
9 over 30 years. Like I said, they need to convince me that
10 they're a good person and I need to feel comfortable with
11 that.
12 Q So is the-- is the-- and that's the standard you use,
13 that the applicant has to convince you that they're a good
14 person?
15 A In simple terms, yes.
16 Q Okay. And do you personally know-- or do you make it
17 a-- a point to personally know each applicant so that you
18 can determine whether they're a good person?
19 A If it's a-- yes. If it's a new-- new applicant I make
20 it a point to have a interview with them. It's just-- and,
21 then again, the gut feeling, intuition kicks in. Someone
22 could slip through the system that's not a good person, but
23 I do-- do try to make a point to meet with everybody, not
24 for renewals, but for-- for a new applicant--
25 Q Okay.

Paul R. Dorr, et al
v. Douglas L. Weber, et al

Page 26 - Page 29

**Page 34**

1　A　Right, correct.
2　Q　Okay. And you didn't do that with Alex?
3　A　Well, I'm trying to remember. I-- his and his-- Paul
4　Dorr's were, I believe, at the same time and I-- he just
5　didn't come in. I didn't-- I don't recall meeting with him.
6　Q　And you don't recall sending him a note to say, "Stop
7　by my office for an interview"?
8　A　No, I don't.
9　Q　You made the decision to deny his application without
10　the interview?
11　A　Yes.
12　Q　Okay. Is there a reason why you didn't give Alex an
13　opportunity to come in and-- and interview?
14　A　No, other than that it wasn't necessary.
15　Q　And why wasn't it necessary?
16　A　Because the issue was that he was 18, and I-- I
17　personally feel that that is too young to carry a concealed
18　weapon.
19　Q　Have you ever granted any other permits to applicants
20　under the age of 21?
21　A　Not that I recall.
22　Q　Do you know if Sheriff Harskamp granted permits for
23　concealed carry to applicants under the age of 21?
24　A　That I don't know.
25　Q　And, now, you understand that the statute points out

**Page 35**

1　the age of 18, correct?
2　A　Correct.
3　Q　But you disagree with that-- that age that's provided
4　in the statute?
5　A　I-- I personally don't feel comfortable issuing a
6　permit to carry to a person that's under 21.
7　Q　Okay. But, again, you're familiar with the Iowa Code
8　that's-- that talks about 20-- or 18 being the important
9　age, correct?
10　A　Correct.
11　Q　And so you-- you have substituted your own age of 21 in
12　place of the legislature providing the age of 18, correct?
13　A　Well, that's-- I wouldn't use that word. I-- I believe
14　the Code also says they have to be 21 to purchase a handgun
15　and they need to be 21 to purchase handgun ammunition, and
16　it's just my feeling that 18 year is in the Code to
17　provide-- say if they became a security officer or if I
18　hired a deputy that was under 21, that leaves that door open
19　so you could give them a permit, I guess.
20　Q　So there are some circumstances under which you would
21　consider granting an applicant a concealed carry permit if
22　they were under the age of 21?
23　A　The only-- the only way would be if a deputy was hired.
24　Q　Okay. Or if they were working in security, as you
25　mentioned?

**Page 36**

1　A　Well, I guess I-- I haven't had that issue come up that
2　I'm aware of, so--
3　Q　Okay.
4　A　-- I don't know. I haven't thought about it.
5　Q　Okay. And did you-- did you ever ask Alex Dorr whether
6　he intended to be security or get into law enforcement?
7　A　No. I just went by what he wrote on his application.
8　Q　Do you have a concealed carry permit?
9　A　Do I personally?
10　Q　Yes.
11　A　I have a professional concealed carry.
12　Q　Okay. And do your deputies have a concealed carry
13　permit?
14　A　Professional.
15　Q　Okay. And what's the difference between a professional
16　and a nonprofessional?
17　A　They need to be a certified officer.
18　Q　Okay.
19　A　And then when their employment is-- is through, then
20　that expires on that date. When their-- like I say, if they
21　would resign or retire or whatever, then that expires.
22　Q　Okay. And why do-- why do your deputies-- why do you
23　and your deputies have a professional concealed carry
24　permit?
25　A　Probably because we're required to have one.

**Page 37**

1　Q　You're required to have a concealed carry permit
2　outside of your work as-- in law enforcement?
3　A　Oh, I-- I guess I don't under-- in order to-- to work
4　and be a Certified Peace Officer we need a professional
5　permit to carry.
6　Q　Okay. Now, the-- the Iowa Code uses the phrase
7　reasonably determine whether-- whether the applicant
8　constitutes a danger to any person. You understand that
9　language to be in the statute, correct?
10　A　You know, I don't know the statute verbatim, but if you
11　could show it to me, then I can--
12　Q　Sure.
13　A　-- take a look.
14　　　　MR. PHILLIPS: I'll show it to him.
15　　　　MR. FAHNLANDER: You've got it?
16　　　　MR. PHILLIPS: Yes.
17　　　　MR. FAHNLANDER: Okay.
18　Q　(BY MR. FAHNLANDER) You agree with me that the
19　subsection 5 of Iowa Code 724.8 uses the phrase reasonably
20　determines that the applicant does not constitute a danger
21　to any person?
22　A　Right.
23　Q　Okay. And what in your mind does reasonably determine
24　mean?
25　A　I guess, what a reasonable person-- how a reasonable

---

**Page 82**

1  A  In this case, no.
2  Q  Well, I'm talking about people use nut to describe
3  people that they disagree with on-- on political issues, for
4  example; isn't that true?
5  A  This has nothing to do with political issues.
6  Q  Well, what does it have to do with?
7  A  He just has a pattern of behavior through the years.
8  Now-- now, Lois Stahl told me that they used to have potluck
9  in the summertime as neighbors and-- but through the years
10  he's just gotten stranger and stranger and weird, and just
11  can't trust him.
12  Q  In what ways has he gotten stranger and stranger and
13  weirder and weirder?
14  A  Well, he's just become more extremist, more radical,
15  and I don't mean just his political thoughts.  It's just his
16  whole approach, the way he treats people.
17  Q  And tell me what you mean by that.
18  A  How he treats people?
19  Q  Yes.
20  A  Like Harriet VandeHoef wrote a very nice letter to the
21  editor, just in part said that she doesn't like all the
22  negative letters in the-- to the editor from-- she didn't
23  name names, but she meant Mr. Dorr and Mr. DeKoter.  It was
24  a very nice letter, but--
25  Q  Okay.  Who's-- I'm sorry.  Who's that again?

---

**Page 83**

1  A  Harriet VandeHoef.  Her husband is Richard VandeHoef,
2  retired senator from Iowa.
3  Q  So she disagrees with-- she thinks Paul Dorr writes
4  things in the paper that are too negative?
5  A  She didn't say his name.  She just-- she just didn't
6  like seeing all the negative editorials in the paper--
7  Q  Okay.
8  A  -- about whatever.
9  Q  So she didn't name Paul Dorr specifically, but you
10  believe that she's talking about Paul Dorr?
11  A  Yes.
12  Q  So the beef she has with Paul Dorr is that he writes
13  negative editorials?
14  A  Well, I'm getting-- I'm trying to tell the story, but
15  yeah.
16  Q  Okay.  Do you agree with me so far?
17  A  Well, I don't know about what else she thinks, but...
18  Q  Okay.  Is that all that you know about what she thinks
19  of Mr. Dorr and what-- why she's concerned about Mr. Dorr?
20  A  Yes.
21  Q  Okay.  That he writes negative editorials?
22  A  I talked to her husband about it because it affected
23  him too, but...
24  Q  Okay.  Go on.
25  A  Because--

---

**Page 84**

1  Q  Continue on.
2  A  Well, the-- Mr. Dorr put-- or allegedly put fliers on
3  car windshields while the VandeHoefs were in church at a
4  church service so everybody who came out all had this-- his
5  response to Harriet VandeHoef's letter.
6  Q  And what-- what was that relating to?  What were the
7  fliers relating to?
8  A  Well, about Harriet VandeHoef's letter to the editor
9  about didn't appreciate all the negative things put in the
10  paper.
11  Q  Okay.  There wasn't anything threatening or dangerous
12  about this exchange of letters to the editor or fliers, was
13  there?
14  A  The-- the fliers just alarms people.  You know, it's
15  not normal.  It's not what we see in northwest Iowa.  You
16  know, we just don't see that kind of behavior, and it
17  angered and concerned the VandeHoefs.  Rich VandeHoef told
18  me afterward-- he says, well, he-- he thinks Paul Dorr is--
19  has some mental health issues and he thinks that he's
20  obsessed with being right and having the last word, so he
21  didn't respond to it.  He wanted to, but he-- but he didn't
22  respond to it because of that reason.
23  Q  Okay.  Anything else?
24  A  Well, I'm just-- no, not on that issue, no.
25  Q  Okay.

---

**Page 85**

1  A  Well, I mean, I-- what was your original question?
2  Q  Tell me-- my original question had to do, I think, with
3  this evidence that you had or were relying on that-- based
4  on conversations from people, that Paul was more radical.
5  What do you-- what do you mean by that?
6  A  Well, just extreme.  He's just an extremist.  And I've
7  had a-- a neighbor here-- his-- you know, that lives a few
8  miles out of town is concerned, because his family lives
9  close to Ocheyedan, and just is-- described Mr. Dorr as a
10  jihadist, he's just an extremist.  And he's just concerned,
11  feels the same way.
12  Q  What do you mean by a jihadist?
13  A  Well, I don't know.  You have to ask that person.  I
14  think he just meant extreme.
15  Q  Who is that?
16  A  Preston DeBoer.
17  Q  Okay.  Now, the-- the word jihadist reflects at least
18  one way of-- is a Muslim holy warrior.  Now, you're not
19  taking Mr. DeBoer's comments as indicating that Paul Dorr is
20  a Muslim holy warrior or something like that, are you?
21  A  No, I'm not.
22  Q  Okay.  How are you using that word-- or how do you--
23  how do you believe that Mr. DeBoer is using that word?
24  A  I think, just an extremist, unreasonable extremist.
25  Q  An unreasonable person?

---

**Paul R. Dorr, et al
v. Douglas L. Weber, et al**

Page 82 - Page 85

---

**Page 86**

1 A And extreme.

2 Q In terms of being difficult to argue with?

3 A In I'd-- probably everything.

4 Q Okay. Someone who wants to get the last word in?

5 A Well, that was what Rich VandeHoef said, get the last--

6 obsessed with being right and having the last word.

7 Q Okay. Obsessed with being right, what do you-- how do

8 you mean that?

9 A I don't know. You'd have to ask Mr. VandeHoef.

10 Q Okay. Now, you personally have known Paul Dorr since

11 you met with him back in the early 1990s, correct?

12 A Well, know of him, and personally I didn't-- you know,

13 we didn't pal around together, so I don't have that much

14 contact with him.

15 Q How many times have you been at the same meeting or

16 same room or-- with Paul Dorr over the years?

17 A I don't know.

18 Q Are we talking dozens, are we talking five? What's--

19 what's your best estimate?

20 A I don't know, maybe-- maybe 10, 12.

21 Q Okay. And as the sheriff you have the ability to meet

22 with Mr. Dorr and to investigate him, correct?

23 A Yes.

24 Q And in connection with these various complaints that

25 you've heard about Mr. Dorr you've not-- you've not had the

---

**Page 87**

1 cause to investigate him, have you?

2 A A cause? You mean a criminal cause?

3 Q Yeah.

4 A No.

5 Q And if he were doing illegal things you could

6 investigate him, correct?

7 A Correct.

8 Q And if there were complaints about Mr. Dorr that you

9 believe rose to a criminal level you could investigate

10 Mr. Dorr, correct?

11 A Correct.

12 Q But you haven't done so?

13 A Correct.

14 MR. PHILLIPS: It's 12:20, Counsel. What do you

15 want to do?

16 MR. FAHNLANDER: Why don't we go about another 15

17 minutes and then we can break for lunch. How's that sound?

18 (Off-the-record conversation.)

19 Q (BY MR. FAHNLANDER) Now, if-- if a person fears Paul

20 Dorr, that's not the same as meaning that he's a danger to

21 them, is it?

22 A It could be.

23 Q But it's not necessarily the same thing?

24 A In this case it is.

25 Q And why would that be-- why would-- why would--

---

**Page 88**

1 if someone fears Paul Dorr, why would that constitute a

2 danger?

3 A Well, for instance, Adri Ruisch told me that she--

4 she was scared of him then and she still is afraid of him.

5 And just a few years ago she did some teaching at the

6 college. And I'm not-- I can't remember if it's the Sheldon

7 college or if it was Orange City, but she had her husband

8 come with her because she was afraid that she would be

9 confronted by Paul Dorr. She was that fearful of him. So

10 she was afraid to go out in the parking lot without her

11 husband there and, you know, that just isn't normal. This

12 is northwest Iowa and people just shouldn't have to live

13 that way.

14 Q Was she afraid he would have a conversation with her?

15 A I-- she's just scared to death of him and always--

16 Q Did she say what she was afraid of? Was she afraid

17 that he would talk with her and disagree her?

18 A No. I think it's much more deeper than that, I think.

19 Q What did she tell you about her fear?

20 A Well, I think she-- he's unpredictable, doesn't know

21 what's gonna happen.

22 Q But would you agree with me that there's no evidence to

23 date that-- that Paul Dorr has done anything dangerous to

24 other people?

25 A Dangerous, no.

---

**Page 89**

1 Q Okay. You-- okay. So you would agree with me that he

2 hasn't done anything to date that's dangerous to other

3 people?

4 A He hasn't assaulted anybody that I'm aware of or--

5 Q Okay. In other words you agree with my statement,

6 correct?

7 A Correct.

8 Q Okay. Now, if you-- if you believed that Paul Dorr

9 were a danger to people you could investigate him, correct?

10 A Well, it depends what it-- what it is.

11 Q Well, if it were serious you could investigate it,

12 correct?

13 A Well, it depends what he did. We're in the department

14 of what happened, you know, so-- what happened in a criminal

15 matter. Okay?

16 Q And you haven't-- there aren't any incident reports

17 other than the-- the one that you provided us, correct?

18 A Well, there should be another one.

19 Q Okay. Other than those-- those one or two, there--

20 there aren't any others that you're aware of, are you?

21 A No, not that I'm aware of.

22 Q Now, your comment in-- in denying Paul his 2007

23 application, the comment that, quote, "Don't trust him," end

24 of quote, is there anything different about that portion of

25 your statement than these concerns from the public that

---

**Page 90**

1 we've been talking about?
2 A What do you mean by that?
3 Q Well, you wrote two things. You wrote, quote,
4 "Concerns from public," and, "Don't trust him." Are they
5 kind of the same thing in your mind or are those two
6 separate things?
7 A Well, I don't-- you know, I don't trust him because I--
8 I feel he's mentally unbalanced, he's not normal. He-- you
9 know, I think I perceive him as a social bully. He's been
10 trying to bully me for over two years now over this gun
11 permit, and usually his bully tactics work because people
12 get weary of his-- his bullying. They don't want to fight,
13 they give up.
14 Q What-- what do you mean by bullying?
15 A Intimidation, putting scathing, vile letters in the--
16 in the paper.
17 Q So he's verbally bullying, is that what you're--
18 A Yeah. I don't mean, you know, "Gimme your lunch
19 money," I don't mean, "or I'll punch you."
20 Q You mean he's a bully in an argument or in a-- in
21 writing letters?
22 A Excessively.
23 Q Okay.
24 A Excessively.
25 Q Is there-- is-- do you mean-- do you have anything else

**Page 91**

1 to add to what you mean by bullying?
2 A Well, I guess I don't mean what you mean. I'm not
3 saying like he's gonna grab somebody and steal their lunch
4 money, but...
5 Q You don't-- you don't believe that's the case, correct?
6 A At this point he hasn't done that, but it wouldn't
7 surprise me if he did.
8 Q Okay. So the evidence of bullying that you're talking
9 about is in an argument or in letter writing you think he's
10 a bully in trying to get his way?
11 A Yes.
12 Q Okay. And whatever-- whatever concern from the
13 county-- or the citizens of the county or lack of trust that
14 you've mentioned in your-- in your report, there wasn't
15 enough there to open an investigation into Paul Dorr,
16 correct?
17 A Well, I-- right, right.
18 MR. FAHNLANDER: Okay. Why don't we take a break
19 now.
20 MR. PHILLIPS: Okay. It's as good a time as any
21 for a break.
22 (Off the record from 12:28 to 1:16 p.m.)
23 Q (BY MR. FAHNLANDER) Sheriff, was your denial of Paul
24 Dorr's application based on hearsay that you received from
25 other people in the county?

**Page 92**

1 A Well, it was a little more than what I'd call hearsay.
2 Certainly I heard things, but I have been a cop for 30 years
3 and I do have some-- you know, that intuition like I
4 mentioned, gut feeling--
5 Q Okay.
6 A -- and just observation on how other people are treated
7 and-- and, yeah, some hearsay in the county, sure.
8 Q Well, what-- what portion of your decision to deny Paul
9 Dorr a concealed carry permit was based on something other
10 than hearsay? Do you understand the question?
11 A Right. Well, I'm used to dealing with hearsay in a
12 criminal matter. This obviously is--
13 Q Well, hearsay is what someone else told you as opposed
14 to--
15 A Right.
16 Q -- your own personal observations.
17 A Right. And in a criminal matter we always try to
18 substantiate anything like that, but in this case, I mean,
19 we're talking about what Mr. Dorr's reputation is in the
20 county, which is lousy. I mean, it is lousy, and he created
21 it. He-- he won't understand that. He won't see that
22 because he won't look in the mirror.
23 Q Okay.
24 A I mean, I'm just telling you just my observations. He
25 won't look in the mirror and say, "Could this be me?" He'll

**Page 93**

1 look out the window and find somebody or somebodies to blame
2 for all of this.
3 Q Okay.
4 A So-- but if you put a man on the street, not Mr. Dorr,
5 you know, and you just polled the people, they would have
6 that impression of Mr. Dorr.
7 Q Okay. So that again is hearsay?
8 A Right.
9 Q What my question is getting at is, other than other
10 people's opinions and so forth, what was the basis for your
11 decision to deny Paul Dorr the concealed carry permit?
12 A What was the basis?
13 Q Yeah--
14 A Well--
15 Q -- other-- you know, other than these other opinions--
16 these other people's opinions that you've told me about.
17 A Well, that would be it.
18 Q Just simply the hearsay from other people?
19 A Well, hearsay and seeing how he treats other people and
20 how he makes them feel and puts them in fear and--
21 Q Well, what-- what personal observations have you made
22 about how Paul treats people?
23 A Well, I seen how he treated me, tried to bully me for
24 over two years now.
25 Q You mean since your decision to deny him the permit?

Case 5:06-cv-04093-MWB-LTS   Document 38-3   Filed 03/11/10   Page 32 of 33   App. 30

Page 114

1 Q Okay.
2 A An oversight.
3 Q The next application is Robert Frey; is that correct?
4 A Correct.
5 Q And you approved his application?
6 A Yes.
7 Q And he also did not fill out the block number 3 asking
8 whether he'd ever been convicted of the misdemeanor crime of
9 assault in violation of individual rights?
10 A Correct.
11 Q Do you know why you didn't require him to fill that
12 out?
13 A No.
14 Q And the next one is Duane Schram?
15 A Correct.
16 Q You approved his application on page 2?
17 A Yes.
18 Q And he didn't fill out question number 8 about-- that
19 says, "Are you addicted to the use of alcohol or any
20 controlled substance?"
21 A Yes.
22 Q Do you know why you didn't require him to fill out that
23 block?
24 A No.
25 Q Prior to your decision in 2007 to deny Paul Dorr his

Page 115

1 concealed carry permit did anyone tell you or suggest to you
2 that you should not-- that you should deny Paul Dorr his
3 permit?
4 A No.
5 Q Okay. And did anyone tell you or suggest to you that
6 Alex Dorr should be denied his permit?
7 A No.
8 Q Are you familiar with the Osceola County Taxpayers
9 Association?
10 A Yes.
11 Q And what-- what do you know about the Osceola County
12 Taxpayers Association?
13 A It's a watchdog group. I-- I--
14 Q Okay. Do you have any opinion about the Osceola County
15 Taxpayers Association?
16 A In what regard?
17 Q Well, in any regard.
18 A I don't have any adverse feeling towards them, because
19 I gave the president a permit to carry.
20 Q Who's the president?
21 A Kevin Wolfswinkel.
22 Q Okay. Did the Osceola County Taxpayers Association
23 conclude that you as the sheriff were overpaid?
24 A Well, they conclude a lot of things.
25 Q Is that one of the conclusions they made?

Page 116

1 A Oh, probably.
2 Q Okay. And did they conclude that-- or did they make
3 the assertion that the county attorney was overpaid?
4 A Oh, sure.
5 Q Okay.
6 A Yeah.
7 Q And did they make these conclusions in around the 2006,
8 2007 time period?
9 A It could have.
10 Q Okay. And did you understand that Paul Dorr was
11 working with the Osceola County Taxpayers Association?
12 A Yes.
13 Q And did the fact that Paul Dorr was working with the
14 Osceola County Taxpayers Association and that they were--
15 they concluded that you and the county attorney were
16 overpaid, did that factor into your decision to deny Paul
17 Dorr his-- his permit?
18 A No. That is a lie that your client told you.
19 Q I'm just asking you the question.
20 A I'm just telling you. Kevin Wolfswinkel's the
21 president. I don't care for him personally because he's
22 arrogant, pompous, snobbish. I dislike him. I don't
23 dislike Mr. Dorr, but I dislike the president, but I did not
24 hear anything on the street about Mr. Wolfswinkel where
25 people are concerned. They think he's radical. They think

Page 117

1 he's smart, but very foolish for palling around with
2 Mr. Dorr. That's what I heard on the street, so I gave him
3 the permit.
4 Q Okay.
5 A He's the president. He directs that organization. He
6 hired Mr. Dorr to be a consultant or whatever. I gave him
7 the permit--
8 Q Okay.
9 A -- but I don't like him.
10 Q Okay.
11 A I want that on the record. Personally, I don't care
12 for him.
13 Q Okay. And you used a word to describe
14 Mr. Wolfswinkel. You said he was radical. Is that the
15 word?
16 A On the street people-- politically radical.
17 Q Okay.
18 A His thoughts are radical and people don't like him for
19 that, but I haven't heard where everyone's concerned that he
20 would snap and hurt-- shoot people or-- or, you know, do
21 anything like that.
22 Q Did-- do they think he's an extremist?
23 A I haven't heard that word mentioned, no.
24 Q Okay. You've heard the word radical?
25 A Right.