**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

PAUL DORR and ALEXANDER
DORR, individually, and on behalf of all
other persons similarly situated,

        Plaintiffs,

vs.

DOUGLAS L. WEBER, individually,
and in his capacity as Sheriff of Osceola
County, and OSCEOLA COUNTY,
IOWA,

        Defendants.

No. C 08-4093-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING CROSS
MOTIONS FOR SUMMARY
JUDGMENT**

———————————

**TABLE OF CONTENTS**

*I.* *INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A.* *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B.* *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*II.* *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   *A.* *Summary Judgment Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   *B.* *Iowa Law Governing Nonprofessional Weapon's Permits* . . . . . . . . 12
   *C.* *Qualified Immunity* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
      *1.* *A violation of a constitutional right* . . . . . . . . . . . . . . . . . 16
      *2.* *Clearly established constitutional right at the time* . . . . . . . . 19
   *D.* *The Dorrs' Equal Protection Claims* . . . . . . . . . . . . . . . . . . . . . 20
      *1.* *Elements of the claim* . . . . . . . . . . . . . . . . . . . . . . . . . 20
      *2.* *Was Alexander "similarly situated" to others?* . . . . . . . . . . 22
      *3.* *Was Paul "similarly situated" to others?* . . . . . . . . . . . . . . 22
   *E.* *The Dorrs' First Amendment Claims* . . . . . . . . . . . . . . . . . . . . . 23
   *F.* *The Dorrs' Due Process Claims* . . . . . . . . . . . . . . . . . . . . . . . . 25

*III.* *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Plaintiffs in this section 1983 action are a father and son who were denied Iowa nonprofessional permits to carry a weapon by their county sheriff. Plaintiffs challenge the constitutionality of the sheriff's actions on multiple constitutional grounds. This case is currently before the court on the parties' cross motions for summary judgment.

## I. INTRODUCTION AND BACKGROUND

### A. Factual Background

The summary judgment record reveals that the following facts are undisputed.

Plaintiffs Paul Dorr ("Paul") and Alexander Dorr ("Alexander") are both residents of Osceola County, Iowa. Paul is Alexander's father. Paul owns and operates a consulting business, Copperhead Consulting Services, which engages in activities to support individuals, groups, associations, and other entities in political and election campaigns involving political, economic, and social issues. Paul was issued nonprofessional concealed weapons permits, pursuant to Iowa Code § 724.7, by the Osceola County Sheriff for the years 2001 through 2006.[1] Defendant Douglas L. Weber ("Sheriff Weber"), as Sheriff of Osceola County, granted Paul a nonprofessional concealed weapons permit in 2005 and 2006. In 2007, Paul again applied to Sheriff Weber for a concealed weapons permit pursuant to Iowa Code § 724.8. Sheriff Weber, however, denied Paul's application, stating on the application form that his reason for disapproval was: "Concerns from Public. Don't trust him." Paul's Application at 2, Defendants' App. at 2 (docket no. 36-2). Sheriff Weber told Paul that citizens he had spoken to had "some fear" of him. Sheriff Weber did not provide Paul with any specific allegations

---

[1]Under Iowa law, nonprofessional permits to carry weapons must be "for a definite period as established by the issuing officer, but in no event shall exceed a period of twelve months." IOWA CODE § 724.7.

made by citizens about him. Sheriff Weber provided no documentation to Paul supporting his statement that there was some fear of him among the citizenry. Sheriff Weber provided no documentation to Paul that he had conducted an investigation concerning an allegation made by a citizen who stated they feared Paul. Sheriff Weber would deny any new or renewal application for a nonprofessional concealed weapon permit submitted by Paul.

Paul has never been convicted of a felony, is not addicted to alcohol or any controlled substance, has no history of repeated acts of violence, and has never been convicted of any crime defined in Iowa Code Chapter 708.[2]

Sheriff Weber perceives Paul to be a "social bully" as a result of numerous letters to the editor Paul has written as well as other letters he has had published in the local paper. As part of his affiliation with the Osceola County Taxpayers Association, Paul has sent out letters to the editor, emails, placed fliers on doors and automobiles, and handed out brochures. Sheriff Weber knows that some citizens of Osceola County have opposing views to those of Paul and oppose Paul's advocacy of issues through his consulting business.

On December 6, 2007, Alexander submitted an application for a nonprofessional concealed weapons permit. At the time he submitted the application, Alexander was seventeen years old. Alexander has never been convicted of a felony, is not addicted to alcohol or any controlled substance, has no history of repeated acts of violence, and has never been convicted of any crime defined in Iowa Code Chapter 708. On July 24, 2008, after Alexander had turned eighteen, Sheriff Weber denied Alexander's application, writing on the application form that his reason for disapproval was: "Subject under 21

_____

[2]Iowa Code Chapter 708 pertains to the crimes of assault, harassment, intimidation, administering harmful substances, willful injury, going armed with intent, spring guns and traps, hazing, stalking, and disarming a peace officer of a dangerous weapon.

years of age." Alexander's Application at 2, Defendants' App. at 3 (docket no. 36-2). On July 24, 2008, Sheriff Weber also wrote a letter to Paul in which he stated:

> I am denying your son Alexander's application for a permit to carry but would consider a new permit from him after his twenty-first birthday.
>
> Your wife Debra can pick-up her permit on July 28th upon payment of the $10.00 fee.
>
> I have previously denied your application and would deny any new application from you.

Weber Letter at 1, Plaintiffs' App. at 205 (docket no. 37-6).

Sheriff Weber does not feel comfortable issuing a permit to carry to a person under the age of 21. Although Sheriff Weber's predecessor had issued permits to carry concealed weapons to individuals under the age of 21, Sheriff Weber has not done so. Sheriff Weber would only consider issuing a permit to carry concealed weapons to individuals under the age of 21 if they were employed in law enforcement or security.

### B. *Procedural Background*

Plaintiffs Paul Dorr and Alexander Dorr (collectively "the Dorrs" unless otherwise indicated) filed their original "Class Action Complaint" (docket no. 2) initiating this action on behalf of themselves and other persons similarly situated on October 28, 2009, under 42 U.S.C. §§ 1983 and 1988 (civil rights statutes), 28 U.S.C. § 2201 (declaratory judgment statute), and the Second and Fourteenth Amendments to the United States Constitution. They named as defendants Douglas L. Weber, individually and in his capacity as Sheriff of Osceola County, "his successors," the Osceola County Sheriff's Department, and Osceola County, Iowa.

Before any party responded by answer or motion to the Dorrs' original Complaint, however, the Dorrs filed a "Class Action First Amended Complaint" (docket no. 16) on November 19, 2008, naming the same defendants, and again asserting claims under 42 U.S.C. §§ 1983 and 1988 (civil rights statutes), 28 U.S.C. § 2201 (declaratory judgment statute), and the Second and Fourteenth Amendments to the United States Constitution. In their Amended Complaint, the Dorrs allege that, in 2007 and 2008, they sought nonprofessional permits to carry weapons, pursuant to IOWA CODE § 724.7, but, even though they met all of the statutory criteria necessary for issuance of such permits, pursuant to IOWA CODE § 724.8, Sheriff Weber refused to issue the permits without justification. Therefore, they allege generally that all defendants acted illegally in denying their applications for permits to carry a weapon, meaning that the decisions were unreasonable, not authorized, and contrary to the terms, spirit, and purpose of the statute creating and defining nonprofessional permits for citizens to carry a weapon under Iowa law, and, thus, the defendants violated their constitutional rights under the Second and Fourteenth Amendments of the United States Constitution, including their rights to due process, equal protection, and to keep and bear arms.

Defendants the Osceola County Sheriff's Department and the "successors" to Sheriff Weber filed a Motion To Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that the Osceola County Sheriff's Department is not a legal entity under Iowa law capable of suing or being sued, and that no such "successors" to Sheriff Weber exist or are identifiable until there is a new sheriff, and, as a result, there are no "successors" to be served and no one to sue. On July 7, 2009, the court granted defendants Osceola County Sheriff's Department and the "Successors" to Sheriff Weber's Motion To Dismiss and they were dismissed from this lawsuit.

The Dorrs subsequently filed a "Class Action Second Amended Complaint" (docket no. 34) on February 9, 2010, naming defendants Weber and Osceola County, and asserting claims under the First Amendment of the United States Constitution, as well as again asserting claims under 42 U.S.C. §§ 1983 and 1988 (civil rights statutes), 28 U.S.C. § 2201 (declaratory judgment statute), and the Second and Fourteenth Amendments to the United States Constitution.

In the Second Amended Complaint, the Dorrs assert the following claims, on their behalf and on behalf of a putative class of similarly situated persons:[3] Count I alleges that Sheriff Weber denied the Dorrs' permit applications in violation of their Second Amendment right to keep and bear arms and their Fourteenth Amendment right to due process; Count II alleges that Osceola County denied the Dorrs' permit applications in violation of their Second Amendment right to keep and bear arms and their Fourteenth Amendment right to due process through Sheriff Weber, as the County's agent, and consistent with policies of Osceola County; Count III alleges that Sheriff Weber denied Paul's permit application in violation of his First Amendment right to freedom of speech and freedom of association; Count IV alleges that Sheriff Weber denied the plaintiffs' permit applications in violation of their right to equal protection under the Fourteenth Amendment; Count V alleges that Osceola County denied the Dorrs' permit applications in violation of their right to equal protection under the Fourteenth Amendment through Sheriff Weber, as the County's agent, and consistent with policies of Osceola County;

---

[3]The putative class is defined in the Second Amended Complaint, ¶ 14, as "all individuals who have or will apply for a nonprofessional permit to carry a weapon under Iowa Code § 724.8, specifically those who have been denied a permit under Iowa Code § 724.8 (5)." The court observes that this class, as presently defined, is not restricted to persons who applied for nonprofessional permits to carry a weapon *in Osceola County* and who were purportedly denied such permits *by the named defendants*.

Count VI seeks declaratory judgment invalidating the provisions of the Iowa Code concerning determinations of whether or not to grant nonprofessional permits to carry weapons on the ground that those provisions are overly broad and vague and, as such, infringe the right to freedom of speech and association in the First Amendment to the United States Constitution; and, Count VII seeks declaratory judgment invalidating the provisions of the Iowa Code concerning determinations of whether or not to grant nonprofessional permits to carry weapons on the ground that those provisions are overly broad and vague and, as such, infringe the right to keep and bear arms in the Second Amendment to the United States Constitution. The Dorrs' constitutional challenge to the Iowa statutes appears to be both on the face of the statutes and as they were applied by Sheriff Weber.[4]

The Dorrs' Second Amended Complaint seeks extensive relief, consisting of the following: (1) certification of the class described in the Second Amended Complaint; (2) judgments that Sheriff Weber and Osceola County violated the Dorrs' constitutional rights to due process as protected under the Fourteenth Amendment of the United States Constitution; (3) judgments that Sheriff Weber and Osceola County violated the Dorrs' constitutional rights to equal protection of the law as protected under the Fourteenth Amendment of the United States Constitution; (4) judgments that Sheriff Weber and Osceola County denied the Dorrs permits to carry a weapon thereby denying their Second Amendment right to keep and bear arms under color of IOWA CODE § 724.8; (5) judgments

---

[4] The court observes that there is no indication in the record that the plaintiffs have given the notice of a constitutional challenge to a state statute or requested a certification by the court of a constitutional challenge to a state statute required by Rule 5.1 of the Federal Rules of Civil Procedure. The court concludes that the defendants named here are only Sheriff Weber, in his individual and official capacities, and Osceola County.

that Sheriff Weber and Osceola County violated the Dorrs' constitutional right to freedom of speech and association as protected by the First Amendment of the United States Constitution; (6) a judgment that IOWA CODE § 724.8(5) is unconstitutional under the United States Constitution; (7) a judgment that Paul Dorr and Alexander Dorr are entitled to nonprofessional permits to carry a weapon under IOWA CODE § 724.8; (7) a judgment (presumably in the form of an injunction) directing Sheriff Weber to immediately issue a nonprofessional permit to carry a weapon to Paul Dorr and Alexander Dorr; (8) a judgment for attorney fees and costs under 42 U.S.C. §§ 1983 and 1988, or any other statute allowing such fees and costs; and (9) such other relief as the court may deem just and equitable. The Dorrs' Second Amended Complaint does not, however, explicitly pray for any relief on behalf of the putative class.

On February 17, 2010, Sheriff Weber and Osceola County, represented by the same counsel, filed a joint Answer To Second Amended Complaint And Jury Demand, denying the Dorrs' claims. Their Answer also asserted various affirmative defenses: that the Second Amended Complaint fails to state a claim upon which relief can be granted; that Sheriff Weber is immune from suit; that issuance of the permits in question is vested in the discretion of the sheriff by virtue of IOWA CODE § 724.11; that such discretion included determining additional criteria for issuance of a permit pursuant to the Iowa Administrative Code; that Sheriff Weber had a rational basis for his decisions to deny the permits in this case; that the Dorrs received all of the process that they were due under the Fourteenth Amendment; that fear of bullying, harassment, and intimidation by Paul Dorr as expressed by citizens of Osceola County is a legitimate basis for denial of a permit; and that there are no similarly-situated individuals to whom permits have been granted, so that there is no basis for an equal protection claim.

After obtaining an extension of the dispositive motion deadline, the parties each filed motions for either partial summary judgment or summary judgment on February 18, 2010. In the Dorrs' Motion For Summary Judgment (docket no. 37), they argue that Sheriff Weber wrongfully denied Paul a permit to carry a concealed weapon based on Paul's activities and association with the Osceola County Taxpayers Association, as well as his political activities and writings. The Dorrs also contend that the denial of their nonprofessional concealed weapons permits constitutes a denial of their Second Amendment right to bear arms and that the denial of their permit applications was done in violation of their right to equal protection and due process under the Fourteenth Amendment. Finally, the Dorrs' contend that Osceola County is a proper party for the purposes of this § 1983 action.

In response, Sheriff Weber and Osceola County filed a timely joint resistance to the Dorrs' Motion For Summary Judgment. Defendants assert that the Dorrs have not established Sheriff Weber abused his discretion in denying their permit applications and, in any event, material questions of fact exist concerning Sheriff Weber's motivation for denying the Dorrs' permit applications. Defendants also argue that denial of the Dorrs' applications for concealed weapons permits does not violate the Second Amendment because prohibitions and restrictions on carrying concealed weapons are lawful under the Second Amendment. Finally, Defendants argue that denial of the Dorrs' applications did not violate their right to equal protection because the Dorrs cannot establish that they were treated differently than other similarly situated persons who applied for concealed weapons permits from Sheriff Weber.

As mentioned above, defendants have filed a Motion For Partial Summary Judgment. In their motion, defendants contend that Sheriff Weber is entitled to qualified immunity on the Dorrs' Second Amendment claim because the right to have a concealed

carrying permit has not been clearly established. Defendants also assert that the denial of the Dorrs' concealed weapons permit applications did not violate the Second Amendment because prohibitions and restrictions on carrying concealed weapons are lawful under the Second Amendment. The defendants further contend that summary judgment should be granted on the Dorrs' due process claim because the Dorrs have no federally protected right to carry concealed weapons. Finally, defendants argue that they are entitled to summary judgment on the Dorrs' equal protection claims because the Dorrs cannot establish that they were treated differently than other similarly situated persons who applied for concealed weapons permits from Sheriff Weber.

The Dorrs filed a timely response to defendants' Motion For Partial Summary Judgment in which they argue that Sheriff Weber is not immune from suit because Sheriff Weber had no legitimate reason to deny the Dorrs' permit applications and, as a result, his denial of their permit applications infringed upon their Second Amendment right to keep and bear arms. The Dorrs also argue that defendants' motion must be also denied because Sheriff Weber's denial of their applications to carry concealed weapons was arbitrary and capricious.

## II. LEGAL ANALYSIS

### A. Summary Judgment Standards

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1982 (2007); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." *Id.* 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."). A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing

that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley*, 415 F.3d at 910 ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). In considering whether a genuine issue of material fact is present the court must view all the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences. *Matsushita*, 475 U.S. at 587-88; *Mosley*, 415 F.3d at 910. However, the court does not weigh the evidence, assess credibility, or determine the truth of the matters presented. *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004); *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996). The court will apply these standards to the parties' cross motions for summary judgment.

### B. Iowa Law Governing Nonprofessional Weapon's Permits

At the center of this lawsuit is the denial of the Dorrs' applications for nonprofessional permits to carry concealed weapons under Iowa law. Therefore, before beginning its analysis of the parties' cross motions for summary judgment, the court will briefly review Iowa's laws governing the issuance of nonprofessional permits to carry weapons.

Iowa Code § 724.7 authorizes the issuance of nonprofessional permits to carry weapons and provides:

> Any person who can reasonably justify going armed may be issued a nonprofessional permit to carry weapons. Such permits shall be on a form prescribed and published by the commissioner of public safety, which shall be readily distinguishable from the professional permit, and shall identify the holder thereof, and state the reason for the issuance of the permit, and the limits of the authority granted by such permit.

> All permits so issued shall be for a definite period as established by the issuing officer, but in no event shall exceed a period of twelve months.

IOWA CODE § 724.7.  Iowa Code § 724.8, in turn, places the following limitations on who may be issued such a permit:

> No person shall be issued a professional or nonprofessional permit to carry weapons unless:
>
> 1. The person is eighteen years of age or older.
>
> 2. The person has never been convicted of a felony.
>
> 3. The person is not addicted to the use of alcohol or any controlled substance.
>
> 4. The person has no history of repeated acts of violence.
>
> 5. The issuing officer reasonably determines that the applicant does not constitute a danger to any person.
>
> 6. The person has never been convicted of any crime defined in chapter 708, except "assault" as defined in section 708.1 and "harassment" as defined in section 708.7.

IOWA CODE § 724.8.

Applications for Iowa residents are required to be made to the sheriff of the county in which the individual resides.  IOWA CODE § 724.11.  This section further provides that "the issuance of the permit shall be by and at the discretion of the sheriff. . .who shall, before issuing the permit, determine that the requirements of sections 724.6 to 724.10 have been satisfied."  IOWA CODE § 724.11.

The requirements of Iowa Code Chapter 724 are supplemented by Iowa Administrative Code 661-91.4, which provides that applicants furnish the following material to the sheriff of the county of their residence:

> *a.* Submit a fully and accurately completed application form;
>
> *b.* Submit a certificate of completion of an approved handgun training program which includes qualifying on a firing range. This requirement may be waived on an application for renewal of a permit;
>
> *c.* If so requested by the sheriff, submit two completed fingerprint cards;
>
> *d.* Meet all the applicable requirements enumerated in Iowa Code chapter 724;
>
> *e.* Comply with the applicable requirements of the United States Code, including 18 U.S.C. 921, et seq., also known as the Gun Control Act of 1968;
>
> *f.* Pay the required fee; and
>
> *g.* Display identification documentation for an Iowa resident as defined in rule 661-91.1(724). This requirement may be waived on an application for renewal of a permit.

IOWA ADMIN. CODE 661-91.4(1)(a)-(g). Iowa's administrative code also authorizes that: "[t]he sheriff may use discretion in determining additional criteria for issuance of a permit pursuant to subrule 91.4(1)." IOWA ADMIN. CODE 661-91.4(2).

The Iowa Court of Appeals has held that "[t]he sheriff may deny a permit because of certain conduct, but the conduct must have a rational connection to the denial." *McIntyre v. Page County Sheriff Office*, 538 N.W.2d 305, 308 (Iowa Ct. App. 1995). However, the denial of a permit application "requires more than the sheriff's personal

opinion." *Id.*

## C. Qualified Immunity

The court first takes up Sheriff Weber's claim that he is entitled to qualified immunity on the Dorrs' Second Amendment claims. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In *Pearson*, the United States Supreme Court offered this explanation of the reasoning behind the concept of qualified immunity: "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* In fact, "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 129 S.Ct. at 815 (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (KENNEDY, J., dissenting). The doctrine "allows officers to make reasonable errors so that they do not always err on the side of caution for fear of being sued." *Amrine v. Brooks,* 522 F.3d 823, 831 (8th Cir. 2008) (internal quotation marks omitted).

Since the *Pearson* decision, the Eighth Circuit Court of Appeals has repeated the two part test applicable to determining whether an official is entitled to qualified immunity: "To determine whether the defendants are entitled to qualified immunity, we ask (1) whether the facts alleged or shown, construed in the light most favorable to [the nonmoving party], establish a violation of a constitutional . . . right, and (2) whether that

constitutional right was clearly established as of [the date of the alleged incident], such that a reasonable official would have known that his actions were unlawful." *Krout v. Goemmer*, 2009 WL 3172180, 4 (8th Cir. 2009) (citing *Pearson*, 129 S. Ct. at 815-16); *Saucier v. Katz*, 533 U.S. 194, 201 (2001), overruled in part on other grounds by *Pearson*, 129 S. Ct. at 818). The official is entitled to qualified immunity unless the court affirmatively answers both of these inquiries. *See id.*

### 1.    *A violation of a constitutional right*

The Dorrs' Second Amendment claims fail at the first step because there was no violation of the Second Amendment. Although the Dorrs point to the Supreme Court's seminal decision in *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008), as establishing a right to carry a concealed weapon under the Second Amendment, a review of that decision does not support their assertion. In *Heller*, the Supreme Court considered "whether a District of Columbia prohibition on the possession of usable handguns in the home violates the Second Amendment to the Constitution." *Id.* at 2787-88. The Court declared unequivocally that the Second Amendment guarantees "the individual right to possess and carry weapons in case of confrontation." *Id.* at 2797. The Court recognized, however, like most rights, "the right secured by the Second Amendment is not unlimited." *Id.* at 2816. Thus, the Supreme Court also made it clear that "the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* The Court offered the following nonexclusive list of what it viewed to be acceptable regulation of firearms:

> [T]he majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in

our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* at 2816-17 (internal citations and footnote omitted). In a footnote immediately following this passage, the Supreme Court explained: "We identify these presumptively lawful regulatory measures only as example; our list does not purport to be exhaustive." *Id.* at 2817 n.26. The Court's recognition, in *Heller*, that prohibitions on carrying concealed weapons were lawful was in full accord with long-standing Supreme Court precedent. Over a century ago, in *Robertson v. Baldwin,* the Court recognized that the Second Amendment right to keep and bear arms is not infringed by laws prohibiting the carrying of concealed weapons. *Robertson v. Baldwin* 165 U.S. 275, 281-82 (1897) ("the right of the people to keep and bear arms (article 2) is not infringed by laws prohibiting the carrying of concealed weapons"). The Dorrs have not directed the court's attention to any contrary authority recognizing a right to carry a concealed weapon under the Second Amendment and the court's own research efforts have revealed none. Accordingly, a right to carry a concealed weapon under the Second Amendment has not been recognized to date.

Even if the court were to assume, *arguendo*, that the *Heller* decision could be read as establishing a right to carry a concealed weapon under the Second Amendment, Sheriff Weber would still be entitled to qualified immunity because no federal court has, to date, held that the Due Process Clause or the Privileges and Immunities Clause of the Fourteenth Amendment incorporates the Second Amendment's right to keep and bear arms against the

states.[5]  *See United States v. Cruikshank,* 92 U.S. 542, 553 (1876) ("The second amendment declares that it shall not be infringed; but this, as has been seen, means no more than that it shall not be infringed by Congress. This is one of the amendments that has no other effect than to restrict the powers of the national government . . . ."); *see also Miller v. Texas,* 153 U.S. 535, 538 (1894) ("[I]t is well settled that the restrictions of [the Second Amendment] operate only upon the Federal power, and have no reference whatever to proceedings in state courts ."); *Presser v. Illinois,* 116 U.S. 252, 265 (1886) (holding that the Second Amendment "is a limitation only upon the power of Congress and the National government, and not upon that of the States."); *National Rifle Ass'n of Am. v. City of Chicago,* 567 F.3d 856 (7th Cir. 2009) (concluding that the Second Amendment is not one of the parts of the Bill of Rights that has been incorporated by the Fourteenth Amendment and thereby made applicable to the states), *cert. granted sub nom. McDonald v. City of Chicago*, 130 S. Ct. 48 (2009); *Maloney v. Cuomo*, 554 F.3d 56, 58 (2d Cir. 2009) (*per curiam*) ("It is settled law . . . that the Second Amendment applies only to limitations the federal government seeks to impose on this right."); *Bach v. Pataki*, 408 F.3d 75, 84 (2d Cir. 2005) (holding that the Second Amendment imposes a limitation on only federal, not state, legislative efforts); *Fresno Rifle & Pistol Club, Inc. v. Van De Kamp*, 965 F.2d 723, 729-31 (9th Cir. 1992) (holding that the Second Amendment applies

---

[5]The court notes that on September 30, 2009, the Supreme Court granted *certiorari* in *McDonald v. City of Chicago*, 130 S. Ct. 48 (Sept. 30, 2009), on the following question: "Whether the Second Amendment right to keep and bear arms is incorporated as against the States by the Fourteenth Amendment's Privileges or Immunities or Due Process Clauses." *McDonald*, 130 S. Ct. 48, No. 08-1521, http://www.supremecourt.gov/qp/08-01521qp.pdf. The case was argued on March 2, 2010.

only to the federal government).[6] Accordingly, even when viewed in a light most favorable to the Dorrs and affording them all reasonable inferences, the court cannot conclude that Sheriff Weber infringed upon the Dorrs' Second Amendment rights in his denial of their applications to carry concealed weapons.[7]

## 2. Clearly established constitutional right at the time

Under the second step in the qualified immunity analysis, a right is "clearly established" if "a 'reasonable officer would understand that what he is doing violates that right.'" *Andrews v. City of W. Branch, Iowa,* 454 F.3d 914, 919 (8th Cir. 2006) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). This second step in the qualified immunity analysis "is a 'fact-intensive inquiry and must be undertaken in light of the specific context of the case, not as a broad proposition.'" *Janis v. Biesheuvel,* 428 F.3d 795, 799 (8th Cir. 2005) (quoting *Littrell v. Franklin,* 388 F.3d 578, 583 (8th Cir. 2004)).

Here, even if today, the Supreme Court were to recognize in *McDonald* that the Due Process Clause or the Privileges and Immunities Clause of the Fourteenth Amendment incorporates the Second Amendment's right to keep and bear arms against the states, an

---

[6] The court notes that in *Nordyke v. King*, 563 F.3d 439, 457 (9th Cir. 2009), the Ninth Circuit Court of Appeals appeared to have been the first federal appellate court to recognize that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment. The Ninth Circuit granted a rehearing en banc of the *Nordyke* panel decision on July 29, 2009. *Nordyke v. King,* 575 F.3d 890, 891 (9th Cir. 2009). In the order granting the rehearing, the court directed that "[t]he three-judge panel opinion shall not be cited as precedent by or to any court of the Ninth Circuit." *Id.*

[7] Therefore, Osceola County is entitled to summary judgment on the Dorrs' Second Amendment claims against it. Accordingly, the court grants this portion of defendants' Partial Motion For Summary Judgment and dismisses the Dorrs' Second Amendment claims against Osceola County.

event the court deems to be very likely, the Dorrs' Second Amendment claims would still fail under the second prong of the qualified immunity test because, as of July 24, 2008, the date Sheriff Weber denied Alexander's application and sent the letter to Paul in which he indicated that he would deny any new application from him, there was no clearly established right to carry a concealed weapon under the Second Amendment which was applicable to the states. Accordingly, the court concludes that Sheriff Weber is entitled to qualified immunity on the Dorrs' Second Amendment claims against him, grants this portion of defendants' Partial Motion For Summary Judgment and dismisses the Dorrs' Second Amendment claims against Sheriff Weber.

### D. The Dorrs' Equal Protection Claims

#### 1. Elements of the claim

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The Equal Protection Clause "requires that the government treat all similarly situated people alike." *Barstad v. Murray County*, 420 F.3d 880, 884 (8th Cir. 2005); *see City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Stated another way, "[t]his is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" *Artway v. Attorney Gen. of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)); *accord Plyler v. Doe*, 457 U.S. 202, 216 (1982). Thus, the Fourteenth Amendment's Equal Protection Clause prohibits government officials from selectively applying laws in a discriminatory way motivated intentionally or purposefully by a prohibited characteristic, such as race or ethnicity. *Brandt v. Davis*, 191 F.3d 887, 893

(8th Cir. 1999); *Central Airlines, Inc. v. United States*, 138 F.3d 333, 334-35 (8th Cir. 1998).

To prove an equal protection claim, a plaintiff must show (1) that he or she was singled out and treated differently from persons similarly situated, and (2) that the plaintiff was singled out on the basis of a prohibited characteristic, such as race. *See Ellebracht v. Police Bd. of Metro. Police Dep't of St. Louis*, 137 F.3d 563, 566 (8th Cir. 1998). A plaintiff bears the burden of proving that he is similarly situated to those whom he compares himself to "in all relevant respects." *Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004). This court has elsewhere explained that, "[a]bsent a threshold showing that [the plaintiff] is similarly situated to those who allegedly received favorable treatment, the plaintiff does not have a viable equal protection claim." *Mummelthie v. City of Mason City*, 873 F. Supp. 1293, 1333 (N.D. Iowa 1995) (citing *Klinger v. Department of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994), *cert. denied*, 513 U.S. 1185 (1995)), *aff'd*, 78 F.3d 589 (8th Cir. 1996) (table op.); *accord Arnold v. City of Columbia*, 197 F.3d 1217, 1220 (8th Cir. 1999) ("To prove their equal protection claim [based on disparate pay], appellants were required, as a threshold matter, to demonstrate that they were treated differently from others similarly situated to them.") (emphasis in the original); *Roark v. City of Hazen*, 189 F.3d 758, 761 (8th Cir. 1999) (holding that plaintiff's equal protection claim failed, because he presented no evidence showing that he was treated in a manner different from that accorded other similarly situated individuals). "[D]issimilar treatment of dissimilarly situated persons does not violate equal protection." *Klinger*, 31 F.3d at 731; *accord Arnold*, 197 F.3d at 1221 ("'Treatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause.'") (quoting *Keevan v. Smith*, 100 F.3d 644, 648 (8th Cir.1996)). "Thus, the initial inquiry in analyzing an equal protection claim is to determine whether a person is similarly situated

to those persons who allegedly received favorable treatment." *United States v. Whiton*, 48 F.3d 356, 358 (8th Cir. 1995).

### 2. Was Alexander "similarly situated" to others?

The defendants seek summary judgment on Alexander's equal protection claim, contending, *inter alia*, that Alexander's claim fails as a matter of law because he cannot point to any individual under the age of 21, who Sheriff Weber has issued a nonprofessional permit to carry a weapon. Alexander contends that he is similarly situated to Michael Schulte and Daniel Betz, two individuals under the age of 21 who were granted nonprofessional permits to carry a weapon. The flaw in Alexander's analysis is that, while both Schulte and Betz were issued permits, neither permit was issued by Sheriff Weber. Rather, both permits were issued by Sheriff Weber's predecessor. Sheriff Weber does not feel comfortable issuing a permit to carry to a person under the age of 21 and has, to date, never done so. Accordingly, the court concludes that neither Schulte or Betz can be considered similarly situated to Alexander and, summary judgment on Alexander's equal protection claim must be granted. Therefore, this portion of defendants' Motion For Partial Summary Judgment is granted and the corresponding part of the Dorrs' Motion for Summary Judgment is denied.

### 3. Was Paul "similarly situated" to others?

With respect to Paul's equal protection claim, upon review of the record, the court is compelled to conclude that genuine issues of material fact preclude summary judgment in either parties' favor on this claim. Specifically, genuine issues of material fact have been generated on the issue of Sheriff Weber's motivation and reason for rejecting Paul's application. While Sheriff Weber asserts it was because of safety concerns raised by members of the public regarding Paul's demeanor, Paul counters that it was the result of his community activism activities and association with the Osceola County Taxpayers

Association.   Accordingly,  the court cannot ascertain at this juncture whether Paul was similarly situated to other applicants for nonprofessional permits to carry a weapon. Therefore, this portion of defendants' Motion For Partial Summary Judgment and the corresponding part of the Dorrs' Motion for Summary Judgment are both denied.

### E.  The Dorrs' First Amendment Claims

In pertinent part, the First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people to peaceably assemble. . . ." U.S. Const. amend. I. "[T]he First Amendment reflects a 'profound national commitment' to the principle that 'debate on public issues should be uninhibited, robust, and wide-open'. . . ." *Boos v. Barry,* 485 U.S. 312, 318, (1988) (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 270 (1964)). The Supreme Court has repeatedly emphasized "the central importance of protecting speech on public issues." *Id.*

It is well-settled that "as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions . . . on the basis of his constitutionally protected speech." *Hartman v. Moore,* 547 U.S. 250, 256 (2006) (citation and quotation omitted); *see Osborn* v. Grussing, 477 F.3d 1002, 1005 (8th Cir. 2007) (quoting *Hartman,* 547 U.S. at 256).  To prevail in an action for First Amendment retaliation, "plaintiff must show a causal connection between a defendant's retaliatory animus and [plaintiff's] subsequent injury. . ." *Id.* at 259.  "Retaliation need not have been the sole motive, but it must have been a 'substantial factor' in" the decision. *Kilpatrick v. King*, 499 F.3d 759,  767 (8th Cir. 2007) (quoting *Wishnatsky v. Rovner*, 433 F.4d 608, 613 (8th Cir. 2006)).  Thus, the

crucial summary judgment issue here is whether the Dorrs have made a sufficient showing of causation.

With respect to Alexander, the court finds that he has not.  Indeed, there is no evidence in the summary judgment record that Alexander engaged in any protected First Amendment activity or that he was treated in a different way from any other similarly situated person under the age of 21 who applied for a nonprofessional permit to carry a weapon.  Therefore, the court denies the Dorrs' Motion for Summary Judgment with respect to Alexander's First Amendment claim.[8]

Paul's claim, however, is on a somewhat different footing.  When construed in the light most favorable to Paul, the evidence linking Paul's First Amendment activities and Sheriff Weber's conduct is sufficient to establish the required "but for" causal connection.  In particular, the court notes that Paul was granted permits by Sheriff Weber and his predecessor for five years without incident but then was denied a renewal of his permit only after he became associated with the Osceola County Taxpayers Association and engaged in advocating its position that Sheriff Weber and other county officials were overpaid.  This circumstantial evidence, however, when construed in the light most favorable to Sheriff Weber, does not conclusively establish that retaliation was a "substantial factor" in Sheriff Weber's decision to reject Paul's application.  Thus, the court finds that a genuine issue of material fact has been generated on the issue of Sheriff Weber's motivation and reason for rejecting Paul's application.  Therefore, this portion of the Dorrs' Motion for Summary Judgment is also denied.

---

[8]Defendants have not sought summary judgment on either Paul or Alexander's First Amendment claims.

### F.  The Dorrs' Due Process Claims

Finally, the court takes up the Dorrs' claims that defendants deprived them of due process of law by denying their applications for nonprofessional permits to carry a weapon.  Defendants argue that they are entitled to judgment as a matter of law because there is no genuine issue of material fact that neither Paul or Alexander have a property interest in obtaining a license to carry a concealed weapon.  The Dorrs have not responded to defendants' assertion on this point.

Property interests protected by the Due Process Clause of the Fourteenth Amendment do not arise whenever a person has only "an abstract need or desire for," or "unilateral expectation of," a benefit.  *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972).  Rather, they arise from "legitimate claim[s] of entitlement . . . defined by existing rules or understandings that stem from an independent source such as state law." *Id.*

In *Erdelyi v. O'Brien,* 680 F.2d 61 (9th Cir. 1982), the Ninth Circuit Court of Appeals considered whether the denial of plaintiff's application for a license to carry a concealed weapon constituted a denial of her right to due process.  The court rejected plaintiff's constitutional challenge, holding that plaintiff had no property interest in carrying a concealed weapon.  The court reasoned:

> Concealed weapons are closely regulated by the State of California. . . . Whether the statute creates a property interest in concealed weapons licenses depends 'largely upon the extent to which the statute contains mandatory language that restricts the discretion of the [issuing authority] to deny licenses to applicants who claim to meet the minimum eligibility requirements.' Section 12050 explicitly grants discretion to the issuing officer to issue or not issue a license to applicants meeting the minimum statutory requirements. Where state law gives the issuing authority broad discretion to grant or deny license applications in a closely regulated field, initial

> applicants do not have a property right in such licenses protected by the Fourteenth Amendment.

*Id.* (citations omitted). Other federal courts, including the Eighth Circuit Court of Appeals have reached the same conclusion regarding permits to carry weapons. *See Gross v. Norton,* 120 F.3d 877, 878 (8th Cir. 1997) (holding plaintiff had no property interest in gun permit "because local authorities have broad discretion [under Minnesota law] to withhold a permit to carry a pistol"); *see also Love v. Pepersack,* 47 F.3d 120, 122-23 (4th Cir. 1995) (noting that an individual has no property right to gun permit when local authorities have discretion to deny such a permit); *Guillory v. Orange County*, 731 F.2d 1379, 1382-1383 (9th Cir. 1984) (holding that a licensed private investigator does not have a property interest in receiving a concealed weapon permit under California law); *Fullman v. Graddick*, 739 F.2d 553, 561 (11th Cir. 1984) (holding that plaintiff had no property right in a pistol permit under Alabama law); *Association of Orange County Deputy Sheriffs v. Gates*, 716 F.2d 733, 734 (9th Cir. 1983) (holding that California statute which provided for issuance of certificate allowing retired law enforcement officers to carry concealed and loaded weapons did create "a constitutionally protected interest" ); *Conway v. King*, 718 F. Supp. 1059, 1061 (D.N.H. 1989) (holding that in light of broad discretion granted licensing authority plaintiff did not have a property interest in a license to carry a concealed weapon).

Iowa law regarding nonprofessional permits to carry firearms grants discretion to the county sheriff. IOWA CODE § 724.11 ("the issuance of the permit shall be by and at the discretion of the sheriff. . ."). Iowa law also establishes minimum criteria for a concealed weapons permit. An applicant for a permit to carry a concealed weapon must be at least 18 years old, have no felony convictions or convictions for any crime defined in Iowa Code chapter 708, except "assault" or "harassment",  cannot be addicted to

alcohol or any controlled substance, cannot have a history of repeated acts of violence. IOWA CODE § 724.8. Accordingly, the court concludes that the Dorrs do not have a constitutionally protected property interest in a nonprofessional permit to carry firearms. Therefore, this portion of defendants' Motion For Partial Summary Judgment is granted, the corresponding part of the Dorrs' Motion for Summary Judgment is denied, and the Dorrs' Due Process claims against defendants are dismissed.

## III. CONCLUSION

For the reasons stated above, the court denies Plaintiffs' Motion For Summary Judgment. The court also grants in part and denies in part defendants' Motion For Partial Summary Judgment as follows:

1.   The motion is denied as to plaintiff Paul Dorr's Equal Protection Claim;

2.   The motion is granted as to defendant Weber's claim for qualified immunity on plaintiffs' Second Amendment claims, plaintiffs' Second Amendment claims against Osceola County, plaintiff Alexander Dorr's Equal Protection claim, and plaintiffs' Due Process claims.

**IT IS SO ORDERED.**

**DATED** this 18th day of May, 2010.

_Mark W. Bennett_
_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA