ALEXANDER DORR
January 13, 2010

COPY

1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

PAUL DORR and                )   No.
ALEXANDER DORR,              )   5:08-cv-040903-MWB
Individually and On          )
Behalf of All Other          )
Persons Similarly            )
Situated,                    )
                             )
         Plaintiffs,         )
                             )
vs.                          )
                             )
DOUGLAS L. WEBER,            )
Individually and In          )
His Capacity as              )
Sheriff, and His             )
Successors, THE              )
OSCEOLA COUNTY               )
SHERIFFS DEPARTMENT,         )
IOWA, and OSCEOLA            )
COUNTY, IOWA,                )
                             )
         Defendants.         )

            *   *   *   *

Telephonic Deposition of ALEXANDER DORR, the deponent herein, taken on behalf of the defendants herein, at 4280 Sergeant Road, Suite 290, Sioux City, Iowa, on Wednesday, January 13, 2010 at 11:06 a.m., before Norine F. Kennedy, Certified Shorthand Reporter in and for the State of Iowa, of Kennedy & Kennedy, Certified Court Reporters, 308 24th Street, Sioux City, Iowa.

APPEARANCES:

MR. VINCENT J. FAHNLANDER
Attorney at Law, of
Mohrman & Kaardal P.A.
33 South Sixth Street
Suite 4100
Minneapolis, Minnesota   55402

    Appearing on behalf of the Plaintiffs;

ALEXANDER DORR
January 13, 2010

2

1   APPEARANCES:   (Continued)

2   MR. DOUGLAS PHILLIPS
    Attorney At Law, of
3   Klass Law Firm
    4280 Sergeant Road
4   Suite 290
    Sioux City, Iowa 51106
5
        Appearing on behalf of the Defendants.
6
                    *   *   *   *
7   Also Present:   Paul Dorr
                    *   *   *   *
8   Reported by Norine F. Kennedy, CSR, CP, RPR
                    *   *   *   *
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ALEXANDER DORR
January 13, 2010

3

1              I  N  D  E  X
2    Caption of Case---------------------------------- 1
3    Appearances------------------------------------- 1
4    Index-------------------------------------------- 3
5    Stipulation-------------------------------------- 4
6    TESTIMONY
7    ALEXANDER DORR
8    Examination by Mr. Phillips----------------  5
9    Recess from 11:10 a.m. to 11:20 a.m.------- 12
10   Examination by Mr. Fahnlander--------------- 12
11   Examination by Mr. Phillips---------------- 16
12   End of Deposition at 11:34 a.m., 1-13-10--- 18
13   Certificate of Reporter--------------------- 19
14   Addendum to Deposition---------------------- 21
15   Certificate of Deponent--------------------- 22
16               *     *     *
17
18
19
20
21
22
23
24
25

KENNEDY & KENNEDY CERTIFIED COURT REPORTERS
(712) 252-1405

5:08-cv-04093-MWB/ Plt. Ex. 13/ (3)

Page 3 to 3

ALEXANDER DORR
January 13, 2010

**Page 4**

1  MR. PHILLIPS: Vince, are you back?
2  MR. FAHNLANDER: Yes, I am.
3  MR. PHILLIPS: Okay. And we have
4  both Mr. Dorrs?
5  PAUL DORR: Yes.
6  ALEXANDER DORR: Correct.
7  MR. PHILLIPS: Okay. I think we're
8  ready to go. Counsel, can we have the same
9  stipulation with respect to the reporter and
10 the taking of this deposition on today's date
11 that we had in the Paul Dorr deposition?
12 MR. FAHNLANDER: Yes.
13 MR. PHILLIPS: Thank you.
14 Mr. Alexander Dorr, are you ready to go?
15 ALEXANDER DORR: I am.
16 MR. PHILLIPS: Were you present
17 during your father's deposition that we took
18 this morning?
19 ALEXANDER DORR: Yes, I was.
20 MR. PHILLIPS: I won't repeat
21 everything that I just said to your father
22 about the importance of going slow in a
23 telephone deposition, but please go slow.
24 Okay?
25 ALEXANDER DORR: Yes.

**Page 5**

1  MR. PHILLIPS: Okay. Our court
2  reporter is going to swear you in.
3  ALEXANDER DORR
4  being first duly sworn, testified as follows:
5  EXAMINATION
6  BY MR. PHILLIPS:
7  Q. Would you please state your name for the
8  record.
9  A. Alexander Lee Dorr.
10 Q. How old are you?
11 A. I am 20 years old.
12 Q. When were you born?
13 A. .
14 Q. Where do you live?
15 A. I live at                         n.
16 
17 Q. Does anyone else live there with you?
18 A. The rest of my family does, yes.
19 Q. And that would include your father Paul
20 Dorr?
21 A. Yes, it would.
22 Q. And what's your mother's name?
23 A. Debra Leigh Dorr.
24 Q. And some of your brothers and sisters
25 live there as well, as I understand it?

**Page 6**

1  A. Correct.
2  Q. Are you in school?
3  A. I will be returning to college in a
4  matter of days.
5  Q. Where do you go to college?
6  A. Atlanta, Georgia.
7  Q. What college?
8  A. Christ College.
9  Q. Would you spell that, please?
10 A. C-h-r-i-s-t. It's Christ College. It's
11 C-h-r-i-s-t C-o-l-l-e-g-e.
12 Q. What year are you in?
13 A. This will be my second semester as a
14 freshman.
15 Q. Have you declared a major?
16 A. No, I haven't.
17 Q. What are your interests in that regard?
18 A. I'm going there to refine my
19 understanding of the Biblical understanding of
20 theology, apologetics, world history and church
21 history.
22 Q. Any idea what you want to do when you
23 finish school?
24 A. I do not.
25 Q. Where did you go to high school?

**Page 7**

1  A. Home schooled.
2  Q. When did you finish your home schooling?
3  A. 2008.
4  Q. Are you employed?
5  A. Not currently, no. I am a -- I am a
6  farmhand in the fall and spring when I -- when
7  I have time in the spring.
8  Q. Where?
9  A. VanWyk Farms.
10 Q. Where is that?
11 A. Three miles south of town. It is two
12 brothers who just need some help.
13 Q. How do you spell VanWyk?
14 A. V-a-n W-y-k.
15 Q. As I understand it, at some point in
16 your life you applied for a permit from the
17 Osceola County Sheriff to carry a concealed
18 weapon; is that correct?
19 A. That is correct.
20 Q. When did you apply?
21 A. 2008.
22 Q. Is that the only time that you've
23 applied?
24 A. Yes, it is.
25 Q. Your application was denied?

ALEXANDER DORR
January 13, 2010

Page 8

1  A. Yes, it was.
2  Q. Did you have any conversation with the
3  sheriff either at the time you applied or at
4  the time of the denial or at any other time for
5  that matter about this process?
6  A. I did not.
7  Q. Did you talk with any county employee or
8  official about your application or its denial?
9  A. I did not.
10 Q. Were you given any reason for the
11 denial?
12 A. No, I was not.
13 Q. Why did you want a permit to carry a
14 concealed weapon?
15 A. Because I would like to exercise my
16 Second Amendment right of bearing arms.
17 Q. Why did you think you needed to bear
18 arms?
19 A. Could you rephrase that question? To
20 bear arms, I wished to exercise my right, and
21 my right of free speech as well, just like my
22 right of free speech.
23 Q. Why did you want to exercise your Second
24 Amendment right?
25 A. I -- Because I wanted -- I had no reason

Page 9

1  other than I want to exercise my Second
2  Amendment right to protect myself.
3  Q. Did you feel like you needed to carry a
4  concealed weapon to protect yourself?
5  A. I feel that there are times when I could
6  carry concealed to protect myself.
7  Q. What times would those be?
8  A. Those would be any times that I would be
9  in danger of my life.
10 Q. Was there some specific time when you
11 felt like you were in danger for your life?
12 A. Currently no, there has not been.
13 Q. Was there in 2008 when you applied for
14 the permit?
15 A. No, there was not. But there were also
16 other family members who had their lives
17 threatened.
18 Q. Who?
19 A. That would be my father.
20 Q. Anyone else?
21 A. No.
22 Q. Who threatened him?
23 A. It was on an internet web site which no
24 one -- where someone said, Someone needs to
25 shoot Paul Dorr.

Page 10

1  Q. When was that?
2  A. I cannot give you the timeline. I do
3  not know or recall.
4  Q. Was it before or after you applied for
5  your permit?
6  A. It was before.
7  Q. I don't want to put words in your mouth,
8  but I want to see if I can summarize what you
9  just told me. You applied for a permit to
10 carry a concealed weapon because you believe
11 the Second Amendment entitles you to that
12 permit; is that right?
13 A. Correct.
14 Q. That -- Your reason for seeking a permit
15 was you thought you had a right to have one?
16 A. Correct.
17 Q. There was no specific incident that made
18 you feel like you needed to carry a concealed
19 weapon in order to protect yourself?
20 A. No, there was not.
21 Q. Was it your idea to apply for this
22 permit or did someone suggest that you should?
23 A. It was my idea.
24 Q. Has anything bad happened to you since
25 the permit was denied because you were unable

Page 11

1  to carry a concealed weapon?
2  A. No, thankfully nothing has.
3  Q. Has there been any times since the
4  permit was denied where you thought to
5  yourself, I sure wish I could carry my gun?
6  A. No, there has not.
7  Q. Why have you not reapplied?
8  A. Because the sheriff told me to reapply
9  when I was 21.
10 Q. How old were you when you submitted your
11 application?
12 A. 18.
13 Q. Do you own firearms?
14 A. No.
15 Q. Have you ever?
16 A. No.
17    MR. PHILLIPS: I don't think I have
18 any other questions. Thank you. Are we done?
19    MR. FAHNLANDER: Let me -- I need
20 to -- I need to figure out -- I need to spend a
21 few minutes determining whether I want to do
22 any redirect.
23    MR. PHILLIPS: Okay. What do you
24 want me to do, call back in 15 minutes?
25    MR. FAHNLANDER: Ten minutes.

ALEXANDER DORR
January 13, 2010

### Page 12

1  MR. PHILLIPS: Okay. I'm going to
2  hang up. I'll call back at 11:20.
3     MR. FAHNLANDER: Okay.
4     MR. PHILLIPS: Thank you.
5         *   *   *
6  (A recess was taken from 11:10 a.m. to
7  11:20 a.m.)
8         *   *   *
9     MR. PHILLIPS: Okay. Vince, do you
10 have any questions?
11    MR. FAHNLANDER: Yes, I do. I've
12 got some questions.
13       E X A M I N A T I O N
14 BY MR. FAHNLANDER:
15  Q. Alex, this is Vince Fahnlander, and I've
16 got a few questions for you. When you applied
17 for the concealed carry permit, did you fill
18 out an application?
19  A. Yes, I did.
20  Q. And do you believe that you met the
21 criteria that was required under the Iowa
22 statute?
23  A. Yes, I do.
24  Q. And at the time that you applied were
25 you over 18 years of age?

### Page 13

1  A. Yes, I was.
2  Q. Have you ever been -- Had you ever been
3  convicted of a felony?
4  A. No.
5  Q. And have you since your application ever
6  been convicted of a felony?
7  A. No, I have not.
8  Q. At the time of your application were you
9  addicted to the use of alcohol or any
10 controlled substances?
11 A. I was not and am not.
12 Q. And at the time of your application had
13 you any history of repeated acts of violence?
14 A. No, nor since.
15 Q. Okay. And do you believe that you
16 constitute a danger to any person?
17 A. No, I do not.
18 Q. And do you believe you constituted a
19 danger to any person prior to your application
20 in the year 2008?
21 A. No.
22 Q. And have you ever been convicted of any
23 crimes defined under Chapter 708, including
24 assaults?
25 A. No.

### Page 14

1  Q. And have you ever been convicted of any
2  harassment?
3  A. No.
4  Q. And when you applied -- Let me strike
5  that. Have you ever had the chance to speak to
6  Sheriff Weber?
7  A. Yes, I have.
8  Q. And what were the circumstances of your
9  speaking to Sheriff Weber?
10 A. I was working for the OCTA and passing
11 out pamphlets at a manufacturing plant in
12 Sibley, and they called the police on us, said
13 they thought we were trespassing. And Sheriff
14 Weber came out and he talked to me. He said, I
15 see that you are on the public right-of-way and
16 you are out of the flow of traffic. You are
17 legally allowed to be there, so I will tell
18 them I cannot tell you to leave. And he got
19 into his police car and left.
20 Q. When you -- When this incident occurred,
21 were you working under -- under your father?
22 A. Yes.
23 Q. And so you were helping him in his
24 consulting work for the OCTA?
25 A. Yes, I was.

### Page 15

1  Q. And was this -- was this interaction you
2  had with Sheriff Weber, was that before you
3  applied for your permit?
4  A. Yes, it was. It was late spring or
5  early summer of 2007.
6  Q. And when you were handing out the
7  leaflets, you know, were you on public
8  property?
9  A. Yes, I was.
10 Q. And did you believe that you had a First
11 Amendment right to be doing what you were
12 doing?
13 A. Yes, I did.
14 Q. Did Sheriff Weber know that you were
15 handing out leaflets and flyers for the Osceola
16 County Taxpayers Association?
17 A. Yes, I believe he did. If I remember
18 correctly, I believe I handed him one.
19 Q. Okay. And -- and when you applied for
20 your permit, did you believe the denial was
21 related at least in part to your connection
22 with the Osceola County Taxpayers Association?
23 A. Yes, I did, and in part to my dad.
24 Q. Okay. Now once you applied, did Sheriff
25 Weber ever give you an opportunity to come in

ALEXANDER DORR
January 13, 2010

**Page 16**

1  to his office and meet with him?
2  A.  Never.
3  Q.  Did he give you any sort of an
4  opportunity to prove that you either had a need
5  to carry a -- for a permit or that you were
6  mature enough to have a permit?
7  A.  No, he did not.
8  Q.  And do you believe that any application
9  on your part prior to your turning 21 would be
10 rejected by Sheriff Weber?
11 A.  Yes, I believed it would.
12         MR. FAHNLANDER:  That's all I have,
13 Alex.  Thank you.
14         E X A M I N A T I O N
15 BY MR. PHILLIPS:
16 Q.  I have a couple more questions.
17 Mr. Dorr, did you -- At any time after you were
18 denied a permit, did you ask Sheriff Weber to
19 meet and talk about this?
20 A.  No, I did not.
21 Q.  Is there any reason why you think
22 there's a connection between your leaflet
23 activity and the denial of your subsequent
24 application other than the timing of those two
25 events?

**Page 17**

1  A.  No.
2         MR. PHILLIPS:  Those are all the
3  questions I have.
4         MR. FAHNLANDER:  Alex, you have the
5  right to read and sign your deposition, and
6  I'll instruct you that I think you should read
7  and sign.
8         THE WITNESS:  Okay.
9         MR. FAHNLANDER:  Thank you.  That's
10 all I have.
11        MR. PHILLIPS:  Vince, when is Alex
12 leaving for school?  We need to know where to
13 send this transcript.
14        PAUL DORR:  Can I interrupt?  Can
15 it be e-mailed?
16        MR. FAHNLANDER:  Well, Alex -- How
17 about Alex will give me his address where he
18 can be contacted and then I'll provide that to
19 you.  How does that sound?
20        MR. PHILLIPS:  That's fine.  My
21 concern is that when this transcript is ready
22 to be read and signed, we won't know where he
23 is, so that's --
24        MR. FAHNLANDER:  That's fine.  I'll
25 provide that to you.

**Page 18**

1         MR. PHILLIPS:  Okay.
2         MR. FAHNLANDER:  All right.
3         MR. PHILLIPS:  I'll forward it to
4  the court reporter then.
5         MR. FAHNLANDER:  Very good.
6         MR. PHILLIPS:  Thank you everyone.
7         MR. FAHNLANDER:  Thank you.
                 *   *   *
9  END OF DEPOSITION AT 11:34 A.M., 01/13/2010
                 *   *   *

**Page 19**

1         CERTIFICATE OF REPORTER
2         I, Norine F. Kennedy, Certified
3  Shorthand Reporter in and for the State of
4  Iowa, do hereby certify as follows:
5         1. That the deponent aforenamed was
6  duly sworn prior to the taking of this
7  deposition.
8         2. That I took down in shorthand,
9  correctly, the testimony of said deponent and
10 have caused the same to be transcribed, and
11 that this deposition is a true and correct
12 record of the testimony given by said deponent
13 at the time I affix my signature to this
14 certificate.  The witness did request the
15 opportunity to read and sign the deposition.
16        3. That the cost for reporting and
17 transcribing this deposition is in the sum of
18 $____, said sum to be advanced and paid to
19 Kennedy & Kennedy, Certified Court Reporters,
20 308 24th Street, Sioux City, Iowa 51104, prior
21 to the use of said deposition at trial, by
22 Mr. Douglas Phillips, Attorney of Sioux City,
23 Iowa.
24        4. That the original transcript of
25 this deposition is to be filed with Mr. Douglas

Case 5:08-cv-04093-MWB   Document 55-8   Filed 06/21/10   Page 8 of 10
Case 5:08-cv-04093-MWB   Document 54-13   Filed 06/17/10   Page 8 of 10

ALEXANDER DORR
January 13, 2010



**Page 20**

1  Phillips.
2  5. That a copy is to be delivered
to Mr. Douglas Phillips and Mr. Vincent
Fahnlander.
5  6. I further certify that I am not
related by consanguinity or affinity within the
fourth degree to any party, his attorney, or
any employee of any of them; that I am not
financially interested in this action, and that
I am not the attorney or employee of any party.
11  7. No exhibits were marked in this
deposition.
To all of which I have verily
affixed my signature this 18th day of January,
2010.

*[signature: Norine F. Kennedy]*

NORINE F. KENNEDY, CSR-RPR
Kennedy & Kennedy
Certified Court Reporters
308 24th Street
Sioux City, Iowa 51104
(712) 252-1405

**Page 21**

CASE NAME: DORR vs. WEBER et al

ADDENDUM TO DEPOSITION
EXAMPLE
Page    Line    Change and Reason

3       2       Smith to Schmitz (Correction)
                Misspelling
28      11      $144 to $175 (Correction)
                Refreshed memory from files
                after deposition was taken.

To all of which I affix my signature this ____
day of _____, 2010, at the city of _____
, state of _____.

_____
ALEXANDER DORR

I did witness the above signature on the ____
day of _____, 2010, in the city of _____
, state of _____.

_____
NOTARY PUBLIC

**Page 22**

CASE NAME: DORR vs. WEBER et al

CERTIFICATE OF DEPONENT

I, the undersigned deponent, do hereby
certify under oath that I did read the
foregoing pages of transcript and that any
corrections I want to make to the foregoing
pages of transcript have been set out on the
foregoing Addendum, and that I have indicated
the correction itself, the page and line number
of the correction, and the reason for the
correction, if any.
In witness whereof, I have hereunto
affixed my signature on this ____ day of
_____, 2010, before the undersigned Notary
Public.

_____
ALEXANDER DORR

I hereby certify I did witness the above
signature on this the ____ day of _____,
2009, in the City of _____, County of
_____, State of _____.

_____
NOTARY PUBLIC

My commission expires: _____.

KENNEDY & KENNEDY CERTIFIED COURT REPORTERS
(712) 252-1405
Page 20 to 22

5:08-cv-04093-MWB/ Plt. Ex. 13/ (8)

Case 5:08-cv-04093-MWB   Document 54-45   Filed 06/17/10   Page 8 of 10

21

1    CASE NAME: DORR vs. WEBER et al

2
                  ADDENDUM TO DEPOSITION
3    EXAMPLE
     Page        Line         Change and Reason
4
     3           2            Smith to Schmitz (Correction)
5                             Misspelling
     28          11           $144 to $175 (Correction)
6                             Refreshed memory from files
                              after deposition was taken.
7    -------------------------------------------------------
     5           23           Leigh to Lee
8                             Misspelling

9

10

11

12

13

14

15   To all of which I affix my signature this 28
     day of January, 2010, at the city of Buford
16   , state of Georgia.

17
                              _____
18                                 ALEXANDER DORR

19
     I did witness the above signature on the 28th
20   day of Jan., 2010, in the city of Buford
     , state of Georgia.
21
                              _____
22                                 NOTARY PUBLIC

23   [Notary Seal: JACQUELINE GREENE, NOTARY PUBLIC, GWINNETT COUNTY, GEORGIA, MY COMMISSION EXPIRES SEPTEMBER 14, 2013]

24

25

22

1  CASE NAME: DORR vs. WEBER et al

2

3  CERTIFICATE OF DEPONENT

4  I, the undersigned deponent, do hereby certify under oath that I did read the foregoing pages of transcript and that any

5  corrections I want to make to the foregoing pages of transcript have been set out on the

6  foregoing Addendum, and that I have indicated the correction itself, the page and line number

7  of the correction, and the reason for the correction, if any.

8  In witness whereof, I have hereunto affixed my signature on this 28th day of

9  January, 2010, before the undersigned Notary Public.

10

11

12  _Alex Dorr_
    ALEXANDER DORR

13

14  I hereby certify I did witness the above signature on this the 28th day of Jan.,

15  2009, in the City of Buford, County of Gwinnett, State of Georgia.

16

17

18

19  NOTARY PUBLIC

20

21  My commission expires: Sept. 14 2013.

22

23

24

25

5:08-cv-04093-MWB/ Plt. Ex. 13/ (10)